[997 NE2d 457, 974 NYS2d 885]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REECE RUDOLPH, Appellant.

Argued May 29, 2013; decided June 27, 2013

498

## POINTS OF COUNSEL

*Jack H. Weiner*, Chatham, for appellant. The sentence was improperly imposed without considering Reece Rudolph for

youthful offender status and should be vacated and the case remanded for resentencing consistent with the provisions of CPL 710.20, with a direction that appellant Rudolph receive "youthful offender" treatment and full credit for time already served. (*People v Drayton*, 39 NY2d 580; *Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan*, 71 NY2d 263; *People v Barlette*, 83 AD2d 695; *People v Evelyn J.*, 11 Misc 3d 277; *People v Barrow*, 51 AD2d 912; *People v Mendoza*, 57 AD2d 846; *People v Miles*, 244 AD2d 433; *People v McGowen*, 42 NY2d 905, 42 NY2d 1015; *People v Gregory*, 290 AD2d 810; *People v Hopper*, 39 AD3d 1030.)

*Kathleen B. Hogan, District Attorney*, Lake George (*Emilee B. Davenport* of counsel), for respondent. I. The Appellate Division, Third Department properly found that defendant waived youthful offender treatment. (*Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan*, 71 NY2d 263; *People v Drayton*, 39 NY2d 580, 39 NY2d 1058; *People v McGowen*, 42 NY2d 905; *People v Rogers*, 5 AD3d 871; *People v Sharlow*, 12 AD3d 724; *People v McClain*, 35 NY2d 483; *People ex rel. Gallagher v Follette*, 22 NY2d 239; *People v Miles*, 244 AD2d 433; *People v Mendoza*, 57 AD2d 846; *People v Cunningham*, 238 AD2d 350, 90 NY2d 857; *People v Barlette*, 83 AD2d 695.) II. The Appellate Division properly found that defendant's waiver of appeal precluded his claim of ineffective assistance of counsel. (*People v Hopper*, 39 AD3d 1030; *People v McGowen*, 42 NY2d 905; *People v Rogers*, 5 AD3d 871, 3 NY3d 711; *People v Howard*, 1 AD3d 718; *People v Richardson*, 295 AD2d 704, 98 NY2d 709; *People v Gregory*, 290 AD2d 810, 98 NY2d 675; *People v Barrow*, 51 AD2d 912; *People v Johnson*, 54 AD3d 1133; *People v Parara*, 46 AD3d 936; *People v Robinson*, 42 AD3d 581.)

## OPINION OF THE COURT

SMITH, J.

CPL 720.20 (1) says that, where a defendant is eligible to be treated as a youthful offender, the sentencing court "must" determine whether he or she is to be so treated. We hold that compliance with this statutory command cannot be dispensed with, even where defendant has failed to ask to be treated as a youthful offender, or has purported to waive his or her right to make such a request. In so holding, we overrule *People v McGowen* (42 NY2d 905 [1977]).

## I

Defendant was charged with several counts of felony drug possession, committed when he was 17 years old. He pleaded

guilty to one count of criminal possession of a controlled substance in the third degree, and orally waived his right to appeal. At the time of the plea, the prosecutor said that he "cannot extend YO as part of this offer" and that "we can eliminate YO as part of the plea bargain," because of the seriousness of the crime. Neither defendant nor the court commented on these remarks. Defendant was later sentenced to five years in prison plus two years of postrelease supervision. There was no mention at sentencing of defendant's eligibility for youthful offender status.

Defendant argued on appeal that the sentencing court erred in failing to address the question of youthful offender treatment at sentencing. The Appellate Division affirmed, saying that defendant "waived his right to be considered for youthful offender treatment by failing to make a request for such consideration" (*People v Rudolph*, 85 AD3d 1492, 1493 [3d Dept 2011]). A Judge of this Court granted leave to appeal (19 NY3d 977 [2012]) and we now reverse.

## II

The result reached by the Appellate Division was consistent with our decision in *McGowen*, which held that where a defendant "made no assertion at the time of sentence that he was entitled to an adjudication of his youthful offender status, his right thereto was waived" (42 NY2d at 906). We conclude, however, that *McGowen* interpreted the youthful offender statute incorrectly.

Under CPL 720.10 (1) and (2), a defendant is "eligible" for youthful offender status if he or she was younger than 19 at the time of the crime, unless the crime is one of several serious felonies excluded by the statute, or unless defendant has a prior felony conviction or has been adjudicated a youthful offender in a previous case. For some eligible youths convicted of misdemeanors, youthful offender treatment is mandatory (*see* CPL 720.20 [1] [b]). For all other eligible defendants, whether to grant youthful offender status lies in the discretion of the sentencing court (CPL 720.20 [1] [a]).

If youthful offender status is granted, the conviction is "deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]). That finding brings with it certain advantages, including a four-year limit on the maximum sentence that can be imposed in a felony case (CPL 720.20 [1] [a]; [3]; Penal Law §§ 60.02 [2]; 70.00 [2] [e]), the sealing of records

relating to the prosecution, and the avoidance of disabilities that might otherwise result from a conviction, including disqualification from public office and public employment (CPL 720.35).

This case depends on the interpretation of the following language in CPL 720.20 (1):

> "Upon conviction of an eligible youth, the court must order a pre-sentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court *must* determine whether or not the eligible youth is a youthful offender." (Emphasis added.)

We read the legislature's use of the word "must" in this context to reflect a policy choice that there be a youthful offender determination in every case where the defendant is eligible, even where the defendant fails to request it, or agrees to forgo it as part of a plea bargain. Ordinarily, of course, defendants may choose to give up their rights, even very important ones, and indeed are deemed to have done so if they do not timely assert them. But this right—not a right to receive youthful offender treatment, but to have a court decide whether such treatment is justified—is different. To disable a court from making that decision is effectively to hold that the defendant may not have the opportunity for a fresh start, without a criminal record, even if the judge would conclude that that opportunity is likely to turn the young offender into a law-abiding, productive member of society.

The judgment of a court as to which young people have a real likelihood of turning their lives around is just too valuable, both to the offender and to the community, to be sacrificed in plea bargaining. Of course there will be many cases in which the interests of the community demand that youthful offender treatment be denied, and that the young offender be sentenced like any other criminal; indeed, there will be cases in which that is obviously the right course—but the court must make the decision in every case. Where the court's ruling is a foregone conclusion, no purpose is served by a plea bargain that takes the decision out of the court's hands.

Our decision in *McGowen*, we have concluded, did not give adequate weight to the importance of a judicial decision on youthful offender treatment, and therefore *McGowen* is overruled. We do not make this decision lightly. We agree with our

dissenting colleagues that the claims of stare decisis are weighty, particularly when the issue is one of statutory interpretation. We have, however, overruled cases interpreting statutes more frequently than the dissenters seem to believe (*see* dissenting op at 512).* On this occasion, as on a number of others, we find the reasons for adopting what we think the correct interpretation of the statute to be more compelling than the reasons for adhering to a mistaken one.

We have tried to foresee any harmful consequences our departure from precedent may have. Unquestionably, there is some risk that prosecutors will be more reluctant to offer plea bargains if they cannot foreclose the possibility of youthful offender treatment. But we think this will not happen often, since prosecutors remain free to oppose such treatment and to make the court aware of reasons that might make it inappropriate in a particular case. In the unusual situation where a prosecutor is unwilling to take the chance that a judge will disagree with his or her recommendation, that prosecutor may bargain for the right to withdraw consent to the plea agreement if youthful offender treatment is granted.

■ We have also considered the possibility that our holding will permit collateral attacks on sentences that have already become final. In view of the factors that determine the retroactivity of judicial decisions (*see People v Pepper*, 53 NY2d 213 [1981]), we are satisfied that there is no reason why the overruling of *McGowen* should have any application to cases where the appellate process has been completed. We base today's holding in part on our conclusion that its impact will be limited to cases still on direct review.

■ Finally, our decision today should not allow any defendants who have pleaded guilty to withdraw their pleas. Defendant here does not and could not seek plea withdrawal; our interpretation of CPL 720.20 (1) gives no reason to think that this defendant's plea, or that of any other defendant similarly situated, was not knowing and voluntary. If anything, defendant pleaded guilty under the impression that the law was less favorable to him than we have held that it is—in other words, the

---

* *See e.g. People v Reome*, 15 NY3d 188 (2010), *overruling People v Hudson*, 51 NY2d 233 (1980); *Matter of Hyde*, 15 NY3d 179 (2010), *overruling Matter of Dillon*, 28 NY2d 597 (1971); *People v Feingold*, 7 NY3d 288 (2006), *overruling People v Register*, 60 NY2d 270 (1983); *Lusenskas v Axelrod*, 81 NY2d 300 (1993), *overruling Brown v Poritzky*, 30 NY2d 289 (1972); *People v Levy*, 15 NY2d 159 (1965), *overruling People v Florio*, 301 NY 46 (1950).

plea offer he accepted may have been better than he thought. This is not a misapprehension that would support an application to withdraw a plea. The only remedy that any defendant is entitled to under our decision today is consideration by the sentencing court of whether youthful offender treatment is appropriate or not.

Accordingly, the order of the Appellate Division should be reversed, and the case remitted to County Court for a determination of whether defendant is a youthful offender.

GRAFFEO, J. (concurring). I agree with the majority that the holding in *People v McGowen* (42 NY2d 905 [1977]) that a young person who fails to request a discretionary youthful offender adjudication at sentencing is precluded from raising the court's failure to rule on youthful offender treatment as an issue on appeal should be overruled and that this case must be reversed and remitted to the sentencing court for further proceedings. An eligible youth should not, by mere silence, be held to have waived youthful offender consideration. But I write separately because I disagree with the majority to the extent that it concludes that a defendant may not expressly waive youthful offender status as part of a negotiated plea. In my view, young defendants should be afforded the same plea bargaining rights as adult offenders.

At the time of defendant Reece Rudolph's arrest, 40 bags of heroin were found in his truck, 330 bags of heroin were discovered in his apartment and he also possessed a quantity of cocaine and $5,500 in alleged drug proceeds. He was subsequently indicted and charged with three counts of criminal possession of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the fourth degree. A month later, pursuant to a negotiated settlement of the charges, defendant pleaded guilty to one count of criminal possession of a controlled substance in the third degree in satisfaction of the five-count indictment and other uncharged crimes. As part of the plea, defendant waived the right to appeal.

Defendant's plea bargain included a range of permissible sentences of imprisonment that depended on the extent of defendant's cooperation with the District Attorney's office pursuant to a cooperation agreement. If defendant fully cooperated, the District Attorney would urge that defendant receive a three-year prison sentence with a recommendation that he participate in a Shock Incarceration program, plus two years of postrelease

supervision. On the other hand, if defendant failed to comply with the cooperation agreement, he could receive a sentence of up to nine years in prison with two years of postrelease supervision. During the plea proceeding, after engaging in a brief off-the-record colloquy with defense counsel, the Assistant District Attorney stated on the record that he was not offering youthful offender status as part of the plea because of the serious nature of the offenses charged. Neither defense counsel nor defendant responded, although the court acknowledged the statement. This is the only reference to youthful offender status during judicial proceedings in this case.

Subsequently at sentencing, the Assistant District Attorney reported that defendant had not provided adequate assistance under the cooperation agreement and therefore requested that defendant receive a sentence of six years plus two years postrelease supervision, which proposed term of imprisonment fell in the middle of the agreed-upon range. Defense counsel asked the court to sentence defendant at the lower end of the negotiated range and recommend his participation in the Shock Incarceration program. The court imposed a sentence of five years in prison plus two years of postrelease supervision, including a recommendation that defendant attend a substance abuse program while incarcerated. But the court declined to issue a Shock Incarceration recommendation in light of "the amount of drugs and cash and the activity that's alleged." Defendant's status as an eligible youth for purposes of a discretionary youthful offender adjudication was not discussed at sentencing.

Defendant appealed, arguing that the sentencing court erred in failing to adjudicate him a youthful offender. The Appellate Division rejected this argument and affirmed the judgment of conviction, noting that defendant "waived his right to be considered for youthful offender treatment by failing to make a request for such consideration" and, as a result, "County Court was not required to address the issue at sentencing" (85 AD3d 1492, 1493 [3d Dept 2011]).

In this Court, defendant reasserts the same contentions made in the Appellate Division. Although he does not dispute the validity of his guilty plea nor proffer any basis for withdrawing it, he maintains that his sentence should be vacated based on the court's failure to address youthful offender adjudication at sentencing. I agree with the majority that defendant is entitled to relief and that the Appellate Division order must be reversed.

Youthful offender adjudication is governed by CPL article 720. Under the New York procedure in effect since 1971, youthful offender status is resolved at sentencing, after guilt for the crime has been determined either by guilty plea or trial (*see* L 1971, ch 981). CPL 720.10 (1) and (2) set forth various eligibility criteria, as described by the majority. If an eligible youth is convicted in a local criminal court (meaning the conviction is for a misdemeanor), has no prior convictions and has never previously been adjudicated a youthful offender, youthful offender status is mandatory. For all other eligible youth, the determination of whether to grant such status lies in the discretion of the sentencing court. Upon conviction, CPL 720.20 (1) directs that "the court must determine whether or not the eligible youth is a youthful offender." If youthful offender status is granted, the conviction is "deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]) and the youth receives certain advantages, including limitations on the maximum sentence that can be imposed (CPL 720.20 [1] [a]; [3]), sealing of records and the like (CPL 720.35). Thus, if it is applicable, article 720 permits the sentencing court to vacate a criminal conviction that has been lawfully obtained—an extraordinary benefit unlike any other right granted in the Criminal Procedure Law. In adopting such a procedure, the legislature meant to ameliorate the sometimes harsh effect of trying eligible youth in adult courts—and it gave sentencing courts a critical role in dispensing justice for young offenders.

In 1977, a few years after New York adopted its post-conviction youthful offender scheme, we decided *People v McGowen* (42 NY2d 905 [1977]), a case in which an eligible youth pleaded guilty to assault in the first degree in satisfaction of an indictment charging him with more serious offenses and received a negotiated sentence. On appeal, defendant claimed that his sentence was defective because the court failed to expressly determine at the sentencing proceeding whether he was entitled to youthful offender status. We rejected that argument, reasoning that, "in view of the fact that the defendant made no assertion at the time of sentence that he was entitled to an adjudication of his youthful offender status, his right thereto was waived" (*id.* at 906). In essence, we applied the preservation rule to defendant's youthful offender argument, concluding that defendant's failure to object to the sentencing court's omission precluded review of the issue on appeal. If we were to apply the *McGowen* preservation analysis in this case, we would be

precluded from considering defendant's argument that the court erred in failing to conduct a youthful offender adjudication at sentencing because defendant did not raise the issue in the sentencing court.

In the years since we decided *McGowen*, society's understanding of juvenile brain function and the relationship between youth and unlawful behavior has significantly evolved. As the United States Supreme Court has recognized, "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence" (*Graham v Florida*, 560 US 48, 68 [2010]). As compared to adults, sociological studies establish that young people often possess "an underdeveloped sense of responsibility," which can "result in impetuous and ill-considered actions and decisions" (*Johnson v Texas*, 509 US 350, 367 [1993]). These developments in the body of knowledge concerning juvenile development underscore the need for judicial procedures that are solicitous of the interests of vulnerable youth, especially under New York's current youthful offender process in which guilt is determined in the context of a criminal justice system designed for adults. Young people who find themselves in the criminal courts are not comparable to adults in many respects—and our jurisprudence should reflect that fact.

Given the essential role that courts play in deciding whether, despite a felony conviction, a young person is entitled to discretionary youthful offender treatment, I believe that the preservation rule should not preclude an eligible youth from seeking review of a sentencing court's failure to conduct a discretionary youthful offender adjudication. This conclusion mandates that *McGowen* be overruled to the extent it held otherwise.[1] Although it is rarely necessary or appropriate to overrule a long-standing precedent, this is one of those unusual occasions when a rule deemed reasonable over 35 years ago must give way to "the lessons of experience and the force of better reasoning" (*People v Bing*, 76 NY2d 331, 338 [1990] [internal quotation marks and citation omitted]). *McGowen*'s application of the general preservation rule in this unique

---

1. The youthful offender issue was not the only argument addressed by the Court in *McGowen*; under the majority analysis as well as my rationale, we overrule only that part of the decision discussing youthful offender adjudication, leaving the remainder of the decision undisturbed.

context falls into that category. A discretionary youthful offender adjudication—a procedure that can result in vacatur of an otherwise valid criminal conviction—is too essential to the fair administration of justice to be deemed waived by silence or acquiescence at sentencing. I therefore agree with the majority that, going forward, in cases involving eligible youth, our courts must adhere to the letter and spirit of CPL 720.20 by addressing the discretionary youthful offender issue on the record when resolving a prosecution involving an eligible youth.[2] I therefore concur with the majority's conclusion that defendant's failure to request a youthful offender adjudication at sentencing does not foreclose his challenge to the sentencing court's failure to do so on appeal.

But I part company with the majority's conclusion that a youthful defendant cannot waive youthful offender status as part of a negotiated plea agreement. Because it indicates waiver is not possible, the majority does not address the People's argument that defendant agreed to forgo youthful offender status when he entered into the plea agreement and waived his right to appeal. I find it necessary to consider this question because, although I conclude that a court must engage in a youthful offender adjudication at sentencing, in my view a defendant should be able to waive the right to youthful offender status as part of a negotiated plea and, if defendant does so, the sentencing court should take that waiver into account when determining whether a youthful offender finding is warranted. In this case, however, I conclude that no such waiver occurred.

When defendant pleaded guilty and waived his right to appeal during the plea proceeding, he did not forfeit the statutory right to have the court engage in a youthful offender adjudication—an event that typically does not occur until sentencing. It is true that defendant received a sentence within the negotiated range, but at the time that he waived his right to appeal he did not know that a prerequisite to the imposition of that sentence—a youthful offender adjudication—would not occur. The People rely on the fact that the Assistant District Attorney stated at

**2.** I am also in agreement that our decision to change course should neither result in the imposition of a significant administrative burden on the courts nor disrupt the finality of criminal judgments. Since we have established a new rule relating to a statutory right that is unrelated to the factual determination of guilt, and there has been substantial reliance on the long-standing precedent we now overrule, our decisions militate against giving this decision retroactive effect (*see People v Mitchell*, 80 NY2d 519 [1992]; *People v Pepper*, 53 NY2d 213 [1981], *cert denied* 454 US 967 [1981]).

the plea proceeding that a grant of youthful offender status was not part of the plea agreement. But the People are not in control of whether a defendant will be declared a youthful offender—the sentencing court may make such an adjudication over the objection of the District Attorney (*see People v Barlette*, 83 AD2d 695 [3d Dept 1981]).

That being said—and contrary to the majority holding—a juvenile offender, represented by counsel, should be able to knowingly and voluntarily waive the right to a youthful offender finding as part of a negotiated plea. In this respect, youthful offender status should be treated similarly to other important statutory rights that can be waived, even though they are not subject to the preservation rule (*see People v Antommarchi*, 80 NY2d 247 [1992] [right to be present at certain sidebar conferences during voir dire not subject to preservation rule]; *People v Vargas*, 88 NY2d 363 [1996] [right to be present at certain sidebar conferences during voir dire can be waived by defendant]; *see also People v Webb*, 78 NY2d 335 [1991] [although a defendant need not preserve a challenge to the court's failure to comply with jury sequestration requirements, the statutory right to jury sequestration can be waived]).

"Plea and sentence negotiation further important policy considerations, conserving law enforcement, judicial and penal resources, and permitting the parties to avoid the uncertainties inherent in the lengthy process of charge, trial, sentence and appeals, thereby 'starting the offender on the road to possible rehabilitation' as soon as practicable" (*People v Avery*, 85 NY2d 503, 506 [1995], quoting *People v Selikoff*, 35 NY2d 227, 233 [1974], *cert denied* 419 US 1122 [1975]). As the American Bar Association Task Force on Youth in the Criminal Justice System has concluded, young offenders should be afforded "the same right and opportunity to plead guilty . . . as adult defendants" (ABA Task Force on Youth in the Criminal Justice System, *Youth in the Criminal Justice System: Guidelines for Policymakers and Practitioners* at 18 [2001], available at http://www.campaignforyouthjustice.org/documents/natlres/ABA%20-%20Youth%20in%20the%20Criminal%20Justice%20System%20Guidelines%20for%20Policymakers.pdf [last accessed June 19, 2013]). The majority's rule, which apparently would preclude eligible youth from waiving a youthful offender finding as part of a negotiated plea, could place them at a significant disadvantage during plea negotiations. The consent of the District Attorney is required before a defendant may plead guilty to less

than the entire indictment (CPL 220.10 [3], [4]) and discretionary youthful offender status significantly impacts the lawful sentence that may be imposed on a defendant convicted of a felony as it caps the maximum term of incarceration at four years (*see* CPL 720.20 [1] [a]; [3]; Penal Law § 60.02; *see* Penal Law § 70.00 [2] [e]). If waiver is not an option, the People are less likely to offer favorable pleas in cases where they feel strongly that youthful offender treatment is inappropriate.

To be sure, the court retains the last word on whether youthful offender status is warranted. But this is true with respect to any sentence negotiated as part of a guilty plea. Such agreements are conditional in the sense that the sentencing court must, in every case, exercise its independent discretion to impose an appropriate sentence, regardless of whether the parties have reached a sentencing bargain (*People v Farrar*, 52 NY2d 302 [1981] [even in instances where a defendant has entered a plea of guilty based on a negotiated plea with a promised sentence, the sentencing court may not abdicate its discretion to determine the proper sentence even if inconsistent with the parties' agreement]).

Although inherently conditional, sentencing agreements are nonetheless important—we have described them as "an integral part of the plea bargaining process" (*id.* at 306)—and the parties' compromise view of what constitutes a fair resolution of the case is usually accorded significant weight. For this reason, sentencing courts typically do not disturb the expectations of the parties in relation to sentencing agreements absent compelling circumstances—and, when they do, the aggrieved party is generally given the opportunity to move to vacate the plea (*see e.g. People v Johnson*, 14 NY3d 483 [2010] [where the parties agreed in the plea bargain that defendant would be adjudicated a youthful offender but the court declined to grant such status at sentencing, the court gave defendant the option of withdrawing his plea]; *Farrar*, 52 NY2d at 307-308 [in the event sentencing court determined that a more lenient sentence was warranted than that agreed to by the parties, the People should be given the opportunity to move to withdraw their consent to the plea]). Since a young offender—no less than any other defendant—should have the opportunity to secure the considerable benefits that a plea bargain may provide, I think it is inappropriate to take the youthful offender issue off the negotiating table, given its significant impact on the lawful sentence defendant may ultimately receive. I would hold that a plea bargain

that addresses youthful offender status is permissible even though the ultimate disposition remains in the hands of the sentencing court.[3]

I find the majority's analysis of this issue to be puzzling. On the one hand, it asserts that youthful offender status is not waivable but, on the other, it indicates that the People can bargain for the right to withdraw their consent to the plea if the court imposes youthful offender status. How is this different from permitting a defendant to agree to a negotiated plea that does not include youthful offender status (subject, of course, to the requirement that the court make its own determination of the issue at sentencing)? If the People can scuttle the plea based on the court's subsequent decision to grant youthful offender status, won't the net result be the same as permitting the parties to bargain in relation to the subject? The majority's view gives young defendants the worst of both worlds: the People can condition their consent to the plea on denial of youthful offender status but defendant cannot gain anything in exchange since he or she cannot agree to waive youthful offender status.

I would hold that it is possible for an eligible youth to knowingly and voluntarily waive youthful offender status as part of a negotiated plea agreement[4]—but I would reject the People's argument that such a waiver occurred in this case. Beyond their reliance on the general waiver of appeal, the People point only to the Assistant District Attorney's statements during the plea proceeding indicating that a youthful offender finding was not part of the deal. There is no indication that, prior to the plea proceeding, the parties had discussed the inclusion of a youthful offender waiver as a component of the negotiated plea, much less that the defense had consented to a waiver. Nor did the Assistant District Attorney state that defendant had agreed to waive youthful offender status—his comments suggest only that the People would oppose such a finding. And defendant's counsel said nothing on the topic. Notably, the sentences at the lower

---

3. This conclusion appears to be consistent with existing plea bargaining practices as a review of New York cases reveals many in which youthful offender status was incorporated in a negotiated plea, including at least one decision from this Court (*see Johnson*, 14 NY3d 483).

4. Of course, there is a significant difference between an agreement that defendant should not receive discretionary youthful offender status—and an agreement that the court will not undertake a discretionary youthful offender adjudication. In my view, the former is the proper subject of a plea agreement but the latter is not.

end of the negotiated range would have fallen under the four-year youthful offender cap, leaving the court the option of sentencing defendant within the negotiated range while at the same time adjudicating him a youthful offender.

Although we have never required rigid formalism in relation to the waiver of statutory rights (*Vargas*, 88 NY2d at 376; *see e.g. People v Williams*, 15 NY3d 739 [2010] [record as a whole demonstrated that defendant had waived *Antommarchi* right]), the record here fails to establish that defendant knowingly and voluntarily waived a youthful offender finding either during the plea proceeding or at sentencing. Due to the sentencing court's failure to conduct a youthful offender adjudication, reversal is warranted and the case must be remitted to the sentencing court. I express no opinion concerning whether defendant should receive youthful offender status on remittal; such a determination continues to rest, as it always has, in the sound discretion of the sentencing court.

READ, J. (dissenting). The majority "read[s] the legislature's use of the word 'must' in [CPL 720.20 (1)] to reflect a policy choice that there be a youthful offender determination in every case where the defendant is eligible, even where the defendant fails to request it, or agrees to forgo it as part of a plea bargain" (majority op at 501). But clearly, this is not the legislature's policy choice—it's the majority's, made in disregard of the legislature and precedent. I respectfully dissent.

Thirty-six years ago, in *People v McGowen* (42 NY2d 905 [1977]), a different Court of Appeals rejected the interpretation of section 720.20 (1) that the majority now adopts—"that the [defendant's] sentence [was] defective because the court did not expressly make a determination on the record, regarding his eligibility for youthful offender treatment, before imposing sentence" (*id.* at 906). That earlier Court, unlike this one, concluded that the right to a youthful offender determination was waivable, and, in fact, had been waived because McGowen (like defendant) "made no assertion at the time of sentence that he was entitled to an adjudication of his youthful offender status" (*id.*).

What's changed in 36 years other than the composition of the Court of Appeals and the policy views of at least four of the judges? Nothing. Whether the 1977 Court's or the 2013 Court's reading of section 720.20 (1) is "right" or "more correct" or "better" may be debatable. It is not debatable, however, that what the Court has done was, until today, essentially unheard

of as an *institutional* matter. As Judge Simons pointed out in *People v Damiano* (87 NY2d 477, 490 [1996, Simons, J., concurring]),

> "[t]here may be cases in which the Court has overruled its own prior interpretation of a statute, but I cannot recall any. The reason why such decisions are rare is obvious. If the Court is wrong in its interpretation of a legislative enactment, the Legislature can readily correct the statute to make its meaning clear."

We have made this same basic point many times (*see e.g. People v Hobson*, 39 NY2d 479, 489 [1976, Breitel, Ch. J.] ["Precedents involving statutory interpretation are entitled to great stability. After all, in such cases courts are interpreting legislative intention and a sequential contradiction is *a grossly (arrogated) legislative power*. Moreover, if the precedent or precedents have 'misinterpreted' the legislative intention, the Legislature's competency to correct the 'misinterpretation' is readily at hand" (citations omitted and emphasis added)]; *People v Concepcion*, 17 NY3d 192, 201 [2011] ["Legislative inaction (which just may, after all, signal satisfaction with [an existing interpretation of a statute]) is not a license for us . . . (to) refashion (a) statute's settled meaning with the freedom we enjoy in matters of common law"]). Of course, stare decisis is not inflexible, but, in general, we have always required some evidence that "our interpretation is contrary to the legislative purpose underlying the statute, that it is unworkable or that, when properly applied, it imposes . . . hardship on litigants or the trial courts" (87 NY2d at 490).

It is not surprising, then, that I (like Judge Simons in 1996) have difficulty identifying cases where the Court "has overruled its own prior interpretation of a statute" (*Damiano*, 87 NY2d at 490). There have been many cases throughout the years, however, where the legislature, either disagreeing with our interpretation or seeking to correct an unintended consequence brought to its attention by one of our decisions, has amended a statute to clarify legislative intent (*see e.g.* the classic example of *Feathers v McLucas*, 15 NY2d 443 [1965] [holding that CPLR 302 provided a basis for jurisdiction only where a nondomiciliary committed a tortious act within the state], as modified by L 1966, ch 590 [expanding CPLR 302 to provide for jurisdiction over any nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state"], and, more recently, *Desiderio v Ochs*, 100 NY2d 159 [2003]

[holding that, under CPLR 5031, the jury's award of future damages must be construed as the total amount to be paid to plaintiff over the compensation period, such that, at the end of 55 years, the plaintiff would have received $40 million, the jury's award, in actual dollars], as modified by L 2003, ch 86 [altering CPLR 5031 to require the court to instruct the jury to specify the growth rate applicable to any award of future damages and clarifying the basis for a court's structuring of such an award]; *People v Kozlow*, 8 NY3d 554, 559 [2007] [holding that "depicts" in former Penal Law § 235.22 was not intended to limit the scope of the statute "to sexual predators who use images, rather than words, to lure minors"], as modified by L 2007, ch 8 [changing "depicts" to "depicts or describes, either in words or images," following Appellate Division's reversal of defendant's conviction]; *Kolnacki v State of New York*, 8 NY3d 277 [2007] [holding that personal injury action that failed to state the amount of monetary damages being sought was jurisdictionally defective under Court of Claims Act § 11 (b), which required that every claim state the "total sum claimed"], as modified by L 2007, ch 606 [excepting personal injury actions from the requirement to state the "total sum claimed"]; *Ehrenfeld v Bin Mahfouz*, 9 NY3d 501, 504 [2007] [holding that CPLR 203 (a) (1) does not confer personal jurisdiction over a person "who sued a New York resident in a non-U.S. jurisdiction( ) and . . . whose contacts with New York stemmed from the foreign lawsuit and whose success in the foreign suit resulted in acts that must be performed by the subject of the suit in New York"], as modified by L 2008, ch 66 [enacting "Libel Terrorism Protection Act," which clarifies when New York courts have jurisdiction to render declaratory relief with respect to defamation judgments secured in foreign jurisdictions that provide for less protection for freedom of speech and press than the United States and New York Constitutions afford]; *People v Sparber*, 10 NY3d 457 [2008] [holding that administrative imposition of post-release supervision did not satisfy CPL 380.30 and 380.40, which required that judges "pronounce sentence in every case where a conviction is entered," but remitting for resentencing because postrelease supervision was mandatory in the cases at bar, and the error was essentially clerical], as modified by L 2008, ch 141 [establishing procedures for reviewing sentencing minutes and timetables for courts to schedule resentencing hearings where postrelease supervision periods were not properly imposed]; *People v Kent*, 19 NY3d 290 [2012] [holding that merely "accessing and displaying" images of child pornography did not

constitute knowing possession under the Penal Law, even where images were automatically embedded in the computer], as modified by L 2012, ch 456 [adding "or knowingly accesses with intent to view" to Penal Law § 263.16]). Tellingly, the legislature never chose to amend section 720.20 (1) to mandate, contrary to our holding in *McGowen*, "a youthful offender determination in every case where the defendant is eligible, even where the defendant fails to request it, or agrees to forgo it as part of a plea bargain" (majority op at 501).

In addition to the jurisprudential and reputational considerations that properly discourage an appellate court from revising its prior statutory interpretations, there are inevitably practical concerns whenever any precedent is overruled. And those concerns multiply with the precedent's age and the frequency of its application. The majority highlights two obvious potential consequences that it claims to have weighed and discounted before deciding to cast *McGowen* aside. First, the majority declares itself "satisfied that there is no reason why the overruling of *McGowen* should have any application to cases where the appellate process has been completed" (majority op at 502). Further, the majority expresses its hope that "our decision today should not allow any defendants who have pleaded guilty to withdraw their pleas" (*id.*).* In short, the majority seems to have fallen prey to the common human tendency to see the wish as father to the thought. Apparently, the Court of Appeals, circa 2013, expects a future Court of Appeals to give more deference to its aspirational dicta than it was willing to afford *McGowen*'s precedent.

Chief Judge LIPPMAN and Judges RIVERA and ABDUS-SALAAM concur with Judge SMITH; Judge GRAFFEO concurs in result in an opinion; Judge READ dissents in an opinion in which Judge PIGOTT concurs.

Order reversed and case remitted to County Court, Warren County, for further proceedings in accordance with the opinion herein.

---

* The majority does not even venture a prediction about the implications of today's decision for predicate sentencing (*see People v Taylor*, 86 Misc 2d 445 [1976] [in case decided before *McGowen*, holding that prior sentencing court's failure to consider the defendant's eligibility for youthful offender status required the court to sentence defendant as a first felony offender]).