This memorandum is uncorrected and subject to revision before publication in the New York Reports.
----------------------------------------------------------------

No. 57
The People &c.,
                    Respondent,
            v.
Anthony N. Pacherille,
                    Appellant.

Frank Policelli, for appellant.
John M. Muehl, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

In satisfaction of a four-count indictment, defendant pleaded guilty to attempted murder in the second degree. Under the plea agreement, he was promised a sentence of 11 years in prison, followed by five years of postrelease supervision. He waived his right to appeal.

- 1 -

At sentencing, County Court was presented with letters from the community, defendant's sentencing memoranda and psychiatric reports, a letter from the victim and the pre-sentence report concerning defendant's prospects for rehabilitation. Upon consideration of all the information before it, County Court denied defendant's request to be adjudicated a youthful offender. While acknowledging defendant's mental illness, County Court determined that the illness did not outweigh the "seriousness of the crime he committed [nor] its impact on the victim and the community." As a result, the court concluded that the interests of justice would not be served by granting defendant youthful offender status (see CPL § 720.20 [1] [a]). Defendant was then sentenced in accordance with the plea agreement. The Appellate Division affirmed (106 AD3d 1136 [2013]).

As we have repeatedly observed, a plea of guilty generally "marks the end of a criminal case, not a gateway to further litigation" (People v Taylor, 65 NY2d 1, 5 [1985]). The plea bargaining process includes "the surrender of many guaranteed rights" (People v Seaberg, 74 NY2d 1, 7 [1989]), such as the right to a trial by jury and to confrontation (see People v Hansen, 95 NY2d 227, 230 [2000]).

A defendant may also waive the right to appeal as a condition of a plea bargain (see Seaberg, 74 NY2d at 5). "[G]enerally, an appeal waiver will encompass any issue that does

not involve a right of constitutional dimension going to 'the very heart of the process'" (People v Lopez, 6 NY3d 248, 255 [2006], quoting Hansen, 95 NY2d at 230).  This Court has recognized that the right to a speedy trial, challenges to the legality of a court-imposed sentence, questions about a defendant's competency to stand trial, and whether the waiver was obtained in a constitutionally acceptable manner cannot be foreclosed from appellate review (see People v Callahan, 80 NY2d 273, 280 [1992]).

In People v Rudolph (21 NY3d 497, 499 [2013]), we held that under CPL 720.20 (1) "where a defendant is eligible to be treated as a youthful offender, the sentencing court 'must' determine whether he or she is to be so treated."  We further held that "compliance with this statutory command cannot be dispensed with, even where [a] defendant has failed to ask to be treated as a youthful offender, or has purported to waive his or her right to make such a request" (id.).  Thus, we created a narrow exception that when a sentencing court has entirely abrogated its responsibility to determine whether an eligible youth (see CPL 720.10 [1], [2]) is entitled to youthful offender status, an appeal waiver would not foreclose review of the court's failure to make that determination.  Here, the sentencing court did, indeed, consider defendant's youthful offender status upon his request.

It is well settled that once considered, a youthful

offender adjudication is a matter left to the sound discretion of the sentencing court and therefore any review is limited (see CPL 720.20 [1] [a]).  As we held in Lopez, "when a defendant enters into a guilty plea that includes a valid waiver of the right to appeal, that waiver includes any challenge to the severity of the sentence.  By pleading guilty and waiving the right to appeal, a defendant has forgone review of the terms of the plea, including harshness or excessiveness of the sentence" (People v Lopez, 6 NY3d 248, 256 [2006]).  To the extent defendant appeals the harshness of his sentence or the sentencing court's exercise of discretion in denying youthful offender status, his appeal waiver forecloses the claim.

We therefore conclude that a valid waiver of the right to appeal, while not enforceable in the face of a failure to consider youthful offender treatment, forecloses appellate review of a sentencing court's discretionary decision to deny youthful offender status once a court has considered such treatment. Accordingly, our review of County Court's denial of defendant's request is precluded by his appeal waiver, the validity of which he does not contest (see People v Brabham, 83 AD3d 1225, 1225 [3d Dept 2011]).

People v Pacherille (Anthony N.)

No. 57


RIVERA, J.(dissenting):

In People v Rudolph, we held that CPL 720.20 (1) mandates "a youthful offender determination in every case where the defendant is eligible, even where the defendant fails to request it, or agrees to forgo it as part of a plea bargain"(21 NY3d 497, 501 [2013]). We thus foreclosed any role for a negotiated plea constraining youthful offender (YO) determination because the legislative mandate that "a court decide whether [YO] treatment is justified" provides an opportunity for juveniles to "have a real likelihood of turning their lives around," and therefore "is just too valuable, both to the offender and to the community, to be sacrificed in plea bargaining" (id. at 501).

The majority acknowledges that Rudolph prohibits the defendant's waiver of YO consideration, but holds that a defendant may expressly waive the right to appellate review of the sentencing court's denial of YO status (majority op at 2-3). I disagree with this interpretation of the statute and Rudolph. Allowing for such a waiver merely serves to reestablish YO consideration as a legally valid "chip" to be leveraged in the plea bargaining process. The majority's decision thus undermines the legislative intent of CPL 710.20 (1), ignores the

considerations we highlighted in Rudolph regarding the life-changing impact of YO treatment for juveniles offenders, and flies in the face of hard data on the ability of juveniles to fully understand their legal rights and the consequences of their choices.  I therefore dissent.

Defendant, who is White and at the time of the crime was a high school student, was charged with various hate crimes for the attempted murder of an African American fellow student. Just prior to the attack, defendant composed a suicide note that included a diatribe against African Americans, Jews, and people of other racial and ethnic groups.  Under the plea arrangement, the People and defendant agreed that he would plead to attempted murder in the second degree, as a non-hate crime, in full satisfaction of the indictment, and in exchange for an 11-year sentence recommendation.

In extending the plea offer, the People demanded that defendant admit that he chose the victim due to his race, that defendant wrote the suicide note and that he agree to its introduction into evidence as part of the record, and that he not allege that he was the victim of bullying or make any other excuses for his actions.  The People also required that defendant waive his right to appeal.  During the plea allocution defendant pleaded guilty to attempted murder in the second degree, and admitted that he had shot the victim "because he was African American."  As agreed, defendant made no mention of bullying by

the victim.

Prior to sentencing, defendant submitted a lengthy memorandum requesting that the court grant YO treatment, arguing that his crime was the result of mental illness, a mitigating factor. Then at the sentencing hearing, defense counsel argued that defendant should be adjudicated a youthful offender, pointing to defendant's mental illness and asserting that the victim had bullied defendant in the past. The presentence report prepared by the Otsego County Probation Department recommended that defendant not be adjudicated a youthful offender, and the prosecutor also objected to a YO finding.

County Court denied YO treatment and, pursuant to the plea agreement, imposed a determinate sentence of 11 years, with 5 years' postrelease supervision. At the sentencing hearing, the court stated it considered the seriousness of the crime and its racist and bigoted nature. The court further discussed defendant's mental illness, and concluded, "[a]lthough his psychological needs are a mitigating factor to be considered in determining the length of his sentence, the Court feels obligated to note that his mental illness does not justify his conduct." The Court then stated:

> "Today [defendant] asks the Court to vacate, that is essentially erase his conviction, and sentence him to little or no additional jail time as a youthful offender.
>
> "The Court has considered this request and denies it. Due to the violent nature of his

crime and its resulting harm and his admission during the plea allocution that his actions were racially motivated, the Court cannot say the interests of justice would be served by granting youthful offender status or by not imposing the agreed upon sentence."

The Appellate Division affirmed defendant's conviction (People v Pacherille, 106 AD3d 1136, 1137 [3d Dept 2013]). As relevant to the matter before us, the court concluded that defendant's waiver of his right to appeal foreclosed his abuse of discretion challenge to County Court's denial of his request for YO treatment. After the Appellate Division rendered its decision, and while defendant's leave to appeal was pending before this Court, we issued our decision in People v Rudolph.

Pursuant to CPL 720.20 (1), "[u]pon conviction of an eligible youth, . . . at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender." We held in Rudolph that this legislative mandate grants every eligible juvenile offender a right to a YO determination (21 NY3d at 501). We also held that this right is "different," and stands in a unique position to other rights afforded to defendants because it carries the potential for "a fresh start, without a criminal record" (id.). We therefore concluded that unlike other rights, "even very important ones" that a defendant may readily give up, the right to YO consideration cannot be waived, either implicitly, by defendant's mere silence in failing to request YO consideration, or

expressly, as part of a plea bargain (id.).  In so holding, we gave force to the mandatory language of CPL 720.20 (1), and overruled People v McGowen (42 NY2d 905 [1977]), which had required an eligible youth to assert the right to a youthful offender adjudication or risk waiving it.

Our decision in Rudolph was based on the explicit statutory language of CPL 720.20 (1), and grounded in what we recognized as the singular importance of the opportunities attendant to a YO designation: the conviction being "vacated and replaced by a youthful offender finding"; a limit on the maximum sentence in a felony case; the sealing of records; and the avoidance of certain disabilities, "including disqualification from public office and public employment" (id. at 500-01).  There can be no serious disagreement about the impact of a YO determination on a juvenile.  It is nothing short of the opportunity for a young offender to become "a lawabiding, productive member of society" (id. at 501; see also id. at 505 [Graffeo, J., concurring] ["article 720 permits the sentencing court to vacate a criminal conviction that has been lawfully obtained -- an extraordinary benefit unlike any other right granted in the Criminal Procedure Law.  In adopting such a procedure, the legislature meant to ameliorate the sometimes harsh effect of trying eligible youth in adult courts"]).

Given our interpretation in Rudolph of the mandatory language of CPL 720.20 (1) that YO determinations are

nonwaivable, as well as our recognition of the unparalleled role that a YO determination serves in our criminal justice system, I would find the Appellate Division erroneously concluded that defendant waived appellate review of the County Court's denial of YO status. To prohibit a plea bargain that forecloses statutorily mandated YO consideration by the sentencing court, but permits a plea bargain that forecloses review as to whether the court abused its discretion in denying YO treatment, undermines the legislative goals of section 720.20 (1). Counter to the purpose of that section, it would mean little to an eligible youth to be considered for YO treatment only to be left with no recourse to challenge a court's wrongful denial. Moreover, to permit a waiver of appellate review would allow a prosecutor to do indirectly what we said in Rudolph the statute explicitly forbids, namely, to bargain with a defendant for the right to judicial consideration of YO status and the opportunity for a new beginning (Rudolph, 21 NY3d at 501). Our decision in Rudolph could not be more direct in its conclusion that YO determinations are exempt from waivers negotiated as part of a plea. The defendant's nonwaivable right extends to appellate review of a denial of YO status. To hold otherwise, as the majority does, risks derogation of a defendant's right to the opportunity for the precious "fresh start," which is the essence of the YO process.

Apart from the legislative goals and purposes that we

identified in Rudolph as the basis for prohibiting waiver of YO consideration, further support for a decision that defendant cannot waive appellate review is found in society's and the United States Supreme Court's recognition of the limited capacity of juveniles to make decisions with the type of loaded future consequences that characterize an appeal of a negative YO determination.  "It is generally accepted and well established that young people and adults mature at different rates and that children simply do not have the capacity to fully appreciate the world and the consequences of their actions and choices" (People v Perez, 23 NY3d 89, 109 [2014] [Rivera, J., dissenting]).  As the Unites States Supreme Court has stated, "[c]hildren generally are less mature and responsible than adults; often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them; [and] . . . are more vulnerable or susceptible to . . . outside pressures than adults" J.D.B. v N. Carolina, 131 S Ct 2394, 2403 [2011] [citations and internal quotation marks omitted]).  Indeed,

> "Studies have established that juveniles are unable to fully understand and appreciate their legal rights (see e.g. Graham v Florida, 560 US 48, 68 [2010] ["developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"]). The neuroscience research data confirms juveniles do not possess the maturity necessary to make decisions that, in the case of criminal convictions, carry lifelong consequences (see e.g. Nitin Gogtay et al., Dynamic Mapping of Human Cortical Development During Childhood Through Early

> Adulthood, Proc Natl Acad Sci, vol 101, No.
> 21 at 8177 [May 25, 2004][1]; Linda Spear, The
> Behavioral Neuroscience of Adolescence,
> 108-111 [2009]). The inescapable conclusion
> is that the inherent differences between
> young people and adults impact on a defendant
> minor's ability to appreciate and respond to
> the requirements of the appellate review
> process (see e.g. Laurence Steinberg et al.,
> Age Differences in Future Orientation and
> Delay Discounting, Child Dev, vol 80, No. 1
> at 30, 35-36 [Jan./Feb. 2009])"

(Perez, 23 NY3d 89, 109-10 [Rivera, J., dissenting]).

The majority's decision is at odds with the United States Supreme Court and society's understanding based on this research, which makes plain that juveniles are not adults and should not be treated as such.  We cannot ignore that "developments in the body of knowledge concerning juvenile development underscore the need for judicial procedures that are solicitous of the interests of vulnerable youth, especially under New York's current youthful offender process in which guilt is determined in the context of a criminal justice system designed for adults" (see Rudolph, 21 NY3d at 506).

Nonetheless, the majority stands mute in the face of this reality.  Instead, the majority relies on People v Lopez (6 NY3d 248 [2006]) in support of its conclusion that defendant may waive appellate review of an unfavorable YO determination. However, we have never applied Lopez in the context of a YO

---

[1] Available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC419576/pdf/1018174.pdf (last accessed April 20, 2014).

finding, and we should not do so in this case.[2]

In Lopez, this Court reiterated that "generally, an appeal waiver will encompass any issue that does not involve a right of constitutional dimension going to 'the very heart of the process' " (id. at 255, quoting People v Hansen, 95 NY2d 227, 230 [2000]).  Such waivers, the Court noted, facilitate "prompt, effective resolution of criminal litigation" (id.) and, "in connection with a negotiated plea and sentence," reflect the defendant's agreement "to end the proceedings entirely at the time of sentencing and to accept as reasonable the sentence imposed" (id.).  The Court therefore held that "a defendant may not subsequently eviscerate [a plea] bargain by asking an appellate court to reduce the sentence in the interest of justice" (id. at 255-56).  The Court highlighted the "important goals of fairness and finality in criminal matters are accomplished only insofar as the parties are confident that the 'carefully orchestrated bargain' of an agreed-upon sentence will not be disturbed as a discretionary matter" (id. at 256).

The Lopez Court's concern with the integrity of the plea bargain process is simply not present in the YO context because a defendant cannot barter the right to YO consideration.

---

[2] In briefing to this Court, neither the People nor defendant addressed the waiver of appellate review of youthful offender consideration.  Indeed, the prosecutor's statements during oral argument suggest that he interpreted Rudolph to prohibit such waiver.

As CPL 720.20 (1) provides, every convicted eligible youth must be considered for youthful offender status.  In <u>Rudolph</u>, we made clear that a guilty plea could not eliminate, by its terms, this statutorily-mandated YO determination by the sentencing court. Thus, there is no carefully orchestrated plea bargain "eviscerated" by appellate consideration because there is no bargain related to a YO finding.  Moreover, while a prosecutor may back away from a plea agreement in those cases where the court grants YO status, a prosecutor cannot avoid a court's determination that an eligible youth should benefit from YO treatment (<u>Rudolph</u>, 21 NY3d at 502).

As a practical and policy matter, the administrative efficiency concerns and the desire for finality referenced by <u>Lopez</u> are no more compelling than the assurance that a trial court has properly considered a youthful offender's opportunity for YO status.  Appellate review is essential to the statutory mandate that a court must consider YO for every eligible youth so that every eligible youth has a chance at avoiding a criminal record and the disastrous consequences that flow therefrom.

Apart from whether defendant could have waived or, in fact, did waive his appellate rights of review, defendant argues his plea agreement prevented him from presenting evidence of mitigating circumstances in support of his request for YO treatment.  Although the majority does not address this contention, other than to conclude that County Court actually

considered defendant's request for YO treatment (maj op at 3),
defendant's argument finds some support in the record.

It is undisputed that defendant's plea required that he
admit a racial motivation for the crime, and it is this admission
of a race-based motive that the court considered in denying YO
status.  However, if the plea prevented defendant from presenting
a basis for a favorable YO determination, the plea would run
counter to our holding in Rudolph.  Thus, regardless of whether
defendant could waive appellate review of the sentencing court's
discretionary consideration of YO treatment, the Appellate
Division should have considered whether the plea, as structured,
foreclosed defendant's arguments that his actions were not
racially motivated, or otherwise limited his ability to
adequately present mitigating factors impacting defendant's
behavior.

The Appellate Division here denied defendant the
opportunity to argue that the plea violated the right to YO
consideration afforded him under CPL 720.20 (1), as recognized in
our holding in Rudolph.  The majority concludes that juveniles
may waive this right, even when the challenge is that the plea
forecloses arguments favorable to the defendant's request.  For
the reasons I have stated, I find that decision unsupported by
law, reason, society's understanding of the difference between
young people and adults, and the ever-increasing appreciation of
our criminal justice system's impact on young lives.  I dissent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, in a memorandum.  Judges Read, Pigott,
Abdus-Salaam and Fahey concur.  Judge Rivera dissents in an
opinion in which Chief Judge Lippman concurs.  Judge Stein took
no part.


Decided May 12, 2015