# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

336

KA 15-00922

PRESENT: WHALEN, P.J., SMITH, CARNI, LINDLEY, AND NEMOYER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

MAURICE R. HOWIE, ALSO KNOWN AS "QUELL",
DEFENDANT-APPELLANT.

---

ERICKSON WEBB SCOLTON & HAJDU, LAKEWOOD (LYLE T. HAJDU OF COUNSEL),
FOR DEFENDANT-APPELLANT.

MICHAEL J. FLAHERTY, JR., ACTING DISTRICT ATTORNEY, BUFFALO (ASHLEY R.
LOWRY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered June 4, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (two counts) and robbery in the first degree (two counts).

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of one count of robbery in the first degree (Penal Law § 160.15 [4]), arising from an incident that occurred on February 9, 2013, as well as two counts of murder in the second degree (§ 125.25 [1], [3]) and one count of robbery in the first degree (§ 160.15 [2]), arising from an incident that occurred on March 6, 2013. The 10-count indictment charged defendant with only the four counts of which he was convicted, but he proceeded to a joint trial with a codefendant who was charged in all 10 counts, which arose from six separate robberies. Before trial, the other individuals charged in the indictment successfully moved to sever their trials. Defense counsel, however, opted against moving for severance for "strategic" reasons, even after being made aware of potential *Bruton* issues (*Bruton v United States*, 391 US 123). At trial, the codefendant's statements implicating defendant in the two incidents for which he was charged were admitted in evidence, without objection. Defendant now contends that the admission of those statements was erroneous.

While we agree with defendant that the admission of those statements violated *Bruton* and that Supreme Court's curative instruction did not alleviate the prejudice (*see People v Cedeno*, 27 NY3d 110, 117, *cert denied* ___ US ___, 137 S Ct 205), we consider defense counsel's strategic decisions to proceed with a joint trial

and to consent to the admission of the codefendant's statements to constitute a waiver of any *Bruton* violation (*see People v Reid*, 71 AD3d 699, 700, *lv denied* 15 NY3d 756; *see also People v Serrano*, 256 AD2d 175, 176, *lv denied* 93 NY2d 878). Indeed, when the codefendant's statements were offered in evidence, defense counsel specifically stated that he had "[n]o objection" to their admission in evidence.

Defendant further contends that the court erred in precluding defense counsel from cross-examining two witnesses concerning the relocation of one of the witnesses as the result of threats made to that witness by the codefendant's family and the prosecution's payment to that witness to assist with the relocation. On the penultimate day of testimony in this month-long trial, defense counsel moved for severance when the trial court precluded him from cross-examining two witnesses concerning alleged threats made to one of the two witnesses by members of the codefendant's family. Those threats had prompted the witness to relocate, with financial assistance from the prosecution. Before trial, the People sought to introduce evidence of the threats and relocation during the direct examination of those witnesses. The codefendant's attorney agreed to forgo any cross-examination concerning the financial assistance provided by the prosecution, and defense counsel informed the court that he took no position on the issue at that time. The court thereafter denied the People's request. It is well established that the court has discretion to determine the scope of the cross-examination of a witness (*see generally People v Corby*, 6 NY3d 231, 234-235) and, contrary to defendant's contention, we conclude that the court did not abuse its discretion in limiting defendant's cross-examination of those two witnesses (*see People v Gong*, 30 AD3d 336, 336, *lv denied* 7 NY3d 812; *cf. People v Gross*, 71 AD3d 1526, 1527, *lv denied* 15 NY3d 774).

Although defendant moved for severance based on the "single issue" of the court's limitation on the cross-examination of those two witnesses, he now contends that the court should have granted his motion for severance because of the *Bruton* violation "coupled with mutually exclusive defenses." "Because defendant on appeal raises a different ground for severance than that set forth in his [midtrial] motion for that relief, defendant failed to preserve for our review his present contention in support of severance" (*People v Ott*, 83 AD3d 1495, 1496, *lv denied* 17 NY3d 808; *see People v Osborne*, 88 AD3d 1284, 1285, *lv denied* 19 NY3d 999, *reconsideration denied* 19 NY3d 1104). We decline to exercise our power to review defendant's contentions as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). Moreover, insofar as defendant contends that severance was warranted based on the *Bruton* violation, we conclude that defendant affirmatively waived that contention (*see People v Pugh*, 236 AD2d 810, 811, *lv denied* 89 NY2d 1099).

We reject defendant's contention that he was denied effective assistance of counsel based on defense counsel's strategy in declining to move for severance before trial and in consenting to the admission of the codefendant's statements. It is well settled that "a reviewing

court must avoid confusing 'true ineffectiveness with mere losing tactics' " (*People v Benevento*, 91 NY2d 708, 712). Indeed, it "is not for [the] court to second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation" (*People v Satterfield*, 66 NY2d 796, 799-800). "To prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations" for defense counsel's allegedly deficient conduct (*People v Rivera*, 71 NY2d 705, 709). Here, defense counsel specifically stated on the record that he made a decision for strategic reasons, and we conclude that defendant has not established that counsel's strategy "was inconsistent with the actions of a reasonably competent attorney" (*People v Henderson*, 27 NY3d 509, 514). Defendant raises one additional ground as a basis for his claim of ineffective assistance of counsel, i.e., the failure to object to a misstatement made by a prosecution witness. Viewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation, we conclude that defendant received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

Contrary to defendant's further contention, the evidence is legally sufficient to support the conviction of robbery in the first degree under Penal Law § 160.15 (4) (*see generally People v Bleakley*, 69 NY2d 490, 495). The surveillance photographs "provided legally sufficient evidence from which the jury could reasonably conclude that defendant was the male in the [photographs]" (*People v Lukens*, 107 AD3d 1406, 1408, *lv denied* 22 NY3d 957). Viewing the evidence in light of the elements of that crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we further conclude that the verdict on that count is not against the weight of the evidence (*see Bleakley*, 69 NY2d at 495).

Finally, we are not persuaded that we should exercise our authority to modify the sentence as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [b]). As the dissent acknowledges, defendant committed heinous crimes, one of which resulted in an innocent man's death. According to the presentence report (PSR), moreover, defendant failed to appreciate the consequences of his conduct or to exhibit any remorse. Indeed, the PSR recounts that the officer who arrested defendant for the murder and related robbery counts stated that defendant was smiling and laughing both during questioning and while being arrested. In view of the severity of the crimes and defendant's callousness, we do not consider this to be an appropriate case in which to exercise our discretionary authority to reduce the sentence.

All concur except LINDLEY, and NEMOYER, JJ., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part inasmuch as we conclude that the sentence imposed on this adolescent offender is unduly harsh and severe. Defendant was 16 years old at the time of the commission of the instant crimes and had no prior criminal record. With respect to the robbery that occurred on February 9, 2013, defendant was sentenced to

a determinate term of incarceration of 10 years.  With respect to the robbery and murder that occurred on March 6, 2013, defendant received sentences of 7 years and 25 years to life, respectively.  It should be noted that defendant thus received the maximum possible sentence for his conviction of murder (*see* Penal Law § 70.00 [2] [a]; [3] [a]), and we would not disturb that sentence.  The sentences related to the March 6 crimes were ordered to run consecutively to the sentence imposed on the February 9 crime.  Supreme Court considered but rejected youthful offender adjudication for the two robbery convictions.

"As the United States Supreme Court has recognized, 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.  For example, parts of the brain involved in behavior control continue to mature through late adolescence' " (*People v Rudolph*, 21 NY3d 497, 506 [Graffeo, J., concurring], quoting *Graham v Florida*, 560 US 48, 67; *see J.D.B. v North Carolina*, 564 US 261, 272).  The Supreme Court has "[t]ime and again" addressed those differences, "observ[ing] that children generally are less mature and responsible than adults . . . ; that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them . . . ; [and] that they are more vulnerable or susceptible to . . . outside pressures than adults" (*J.D.B.*, 564 US at 272 [internal quotation marks omitted]).

In her concurring opinion in *Rudolph*, Judge Graffeo addressed the fact that "sociological studies [have] establish[ed] that young people often possess 'an underdeveloped sense of responsibility,' which can 'result in impetuous and ill-considered actions and decisions' " (*id.*, quoting *Johnson v Texas*, 590 US 350, 367, *reh denied* 509 US 941).  Judge Graffeo further wrote that "[y]oung people who find themselves in the criminal courts are not comparable to adults in many respects–and our jurisprudence should reflect that fact" (*id.*).  In our view, this is one case where we should exercise our discretion and reduce the sentence.

Here, as noted, defendant was only 16 years old when he committed the crimes, and he was known by his coaches and teachers to be a polite and respectful high school student.  His "downward spiral" happened so fast that neither his coaches nor his father could stop it.  We note that the two crimes occurred within a one-month span; that defendant was not the actual shooter; and that defendant received the maximum possible sentence for the murder convictions.  We do not dispute the fact that the crimes of which defendant was convicted are heinous crimes and that his actions contributed to the death of an innocent man.  In our view, however, the sentence imposed on this defendant, under the circumstances of this case, is unduly harsh and severe, and we would modify the judgment by directing that all of the sentences run concurrently with each other, which would still leave defendant serving 25 years to life in prison.

Entered:  April 28, 2017                        Frances E. Cafarell
                                                Clerk of the Court