[25 NYS3d 221]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUDE FRANCIS, Appellant.

Second Department, January 27, 2016

---

### APPEARANCES OF COUNSEL

*Lynn W.L. Fahey*, New York City (*Allegra Glashauser* of counsel), for appellant.

*Kenneth P. Thompson, District Attorney*, Brooklyn (*Leonard Joblove, Anthea H. Bruffee, Daniel Berman* and *Morgan J. Dennehey* of counsel), for respondent.

### OPINION OF THE COURT

LEVENTHAL, J.P.

In *People v Campbell* (98 AD3d 5 [2012]), this Court held that a defendant's prior juvenile delinquency adjudication may not be considered in determining his or her risk level designation under the Sex Offender Registration Act (*see* Correction Law art 6-C; hereinafter SORA). On this appeal, we are asked to consider whether the reasoning set forth in *Campbell* should be extended to youthful offender adjudications. For the reasons discussed below, we hold that the Board of Examiners of Sex Offenders (hereinafter the Board) and the Supreme Court properly considered the defendant's prior youthful offender adjudication in determining the defendant's SORA risk level designation.

In April 2003, the defendant forcibly raped a victim at gunpoint. He was convicted, after a jury trial, of rape in the first degree and robbery in the first degree, and later sentenced. In February 2014, prior to the defendant's scheduled release from prison, the Board prepared a risk assessment instrument (hereinafter RAI) and case summary to assess his risk of reoffending and his dangerousness to the community under the Sex Offender Registration Act: Guidelines and Commentary (2006) (hereinafter the Guidelines). The Board assessed points against the defendant under various factors in the Guidelines, resulting in a total score of 115 points and a presumptive risk level three (high risk) designation. At issue on appeal are the points assessed against the defendant based upon his criminal history.

At the SORA hearing, the People relied upon the RAI, the case summary, and the presentence report. These materials showed that the defendant's prior criminal history consisted solely of a February 2001 youthful offender adjudication, which followed his conviction of criminal possession of stolen property in the third degree, a class D felony (*see* Penal Law § 165.50). Based on this youthful offender adjudication, in the "Criminal History" category of the RAI the Board assessed the defendant 15 points under risk factor 9 (number and nature of prior crimes) and 10 points under risk factor 10 (recency of prior felony or sex crime). Defense counsel argued that the defendant should not have been assessed these points, on the ground that a youthful offender adjudication was not a conviction of a crime pursuant to CPL 720.35 (1). Relying upon *People v Campbell*, defense counsel argued that so much of the Guidelines as considered a youthful offender adjudication to be the conviction of a crime conflicted with the relevant portions of the Criminal Procedure Law. Following the SORA hearing, the Supreme Court adjudicated the defendant a level three sex offender, concluding that *People v Campbell* did not preclude the Board from considering the defendant's youthful offender adjudication in determining his SORA risk level designation.

On appeal, the defendant contends that his youthful offender adjudication should not have been considered as a part of his criminal history in determining his SORA risk level designation. Notably, if the defendant is correct, he would have been assessed only 90 points, making him a presumptive level two sex offender (*see* Guidelines at 3).

We begin by examining the purpose of youthful offender adjudications and the restrictions upon their use in subsequent judicial proceedings. "The youthful offender provisions of the Criminal Procedure Law emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" (*People v Drayton*, 39 NY2d 580, 584 [1976]; *see Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan*, 71 NY2d 263, 268 [1988]). Pursuant to CPL 720.10 (1) and (2), a defendant is "eligible" for youthful offender status if he or she was younger than 19 at the time of the crime, unless the crime is one of several serious felonies excluded by the statute, or unless the defendant has a prior felony conviction or has been adjudicated a youthful offender in a previous case

(*see People v Rudolph*, 21 NY3d 497, 500 [2013]). Upon a plea of guilty or a guilty verdict after trial, when a sentencing court adjudicates a defendant a youthful offender, the conviction is "deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]).

The primary advantage of youthful offender treatment "is the avoidance of the stigma and practical consequences which accompany a criminal conviction" (*People v Cook*, 37 NY2d 591, 595 [1975]).[1] To that end, CPL 720.35, which delineates the effects of a youthful offender adjudication, begins by declaring that a youthful offender adjudication "is not a judgment of conviction for a crime or any other offense" (CPL 720.35 [1]).[2] In keeping with the statutory goal that eligible youths not be stigmatized by a youthful offender adjudication, CPL 720.35 further directs the sealing of the records relating to the prosecution (*see* CPL 720.35; *see also People v Rudolph*, 21 NY3d at 500). In this regard, CPL 720.35 (2) provides, as pertinent here:

> "*Except where specifically required or permitted by statute or upon specific authorization of the court,* all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency, other than . . . the department of corrections and community supervision and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law" (emphasis added).[3]

---

1. CPL 720.35 prohibits courts from using a youthful offender adjudication to impeach the credibility of a witness (*see People v Cook*, 37 NY2d 591 [1975]). However, it has been held that the facts underlying a youthful offender adjudication may be introduced into evidence against a defendant in a criminal proceeding (*see People v Gross*, 74 AD2d 701, 702-703 [1980]).

2. In contrast, under federal law, a New York youthful offender adjudication can qualify as a prior conviction for a felony drug offense, thereby enhancing a defendant's mandatory minium sentence (*see United States v Sampson*, 385 F3d 183, 194-195 [2d Cir 2004]).

3. In addition, when the conviction which precedes a youthful offender adjudication is for a "sex offense" as defined by Mental Hygiene Law article 10, CPL 720.35 (4) permits disclosure of such records and reports to "the commissioner of mental health or the commissioner of developmental dis-

Notwithstanding these restrictions on the use of youthful offender adjudications in subsequent judicial proceedings, in formulating the Guidelines, the Board made a conscious decision to define the term "crimes" to include youthful offender adjudications (Guidelines at 6). The Guidelines explain that the Board had "concluded that these determinations are reliable indicators of wrongdoing and, therefore, should be considered in assessing an offender's likelihood of reoffense and danger to public safety" (*id.*). In a footnote, the Guidelines acknowledge that a youthful offender adjudication is not a conviction, but indicate that the Board had found that such an adjudication "constitutes a reliable determination that an offender committed the underlying criminal conduct" (*id.* at 6 n 6, citing *People v Compton*, 38 AD2d 788 [1972]).

In support of his contention that he should have not been assessed any points under risk factors 9 and 10 based upon his youthful offender adjudication, the defendant continues to rely on *People v Campbell* (98 AD3d 5 [2012]), wherein this Court held that, in a SORA proceeding, the Board and the Supreme Court may not assess points against an offender based upon a prior juvenile delinquency adjudication. In *Campbell*, this Court observed that, while the Family Court Act generally prohibits the use of juvenile delinquency adjudications against an individual's interests (*see* Family Ct Act § 380.1 [1]), the Guidelines allowed the Board and the court to consider such adjudications to determine the age of a sex offender at the time of the commission of his or her first sex offense (98 AD3d at 11). We explained that, because Family Court Act § 381.2 generally prohibits the use of juvenile delinquency adjudications against an individual's interests in judicial proceedings, the Board was without the power to adopt a Guideline which contravened the clear legislative pronouncement set forth in that statute. Thus, this Court held that the Board had "exceeded its authority by adopting that portion of the Guidelines which includes juvenile delinquency adjudications in its definition of crimes for the purpose of determining a sex offender's criminal history" (98 AD3d at 12; *see People v Dash*, 111 AD3d 907, 907-908 [2013]; *People v Felice*, 100 AD3d 609, 610 [2012]). As a result, we determined that the Supreme Court should not have considered Campbell's juvenile delinquency adjudication in determining his appropriate risk level designa-

---

abilities, as appropriate; the case review panel; and the attorney general pursuant to section 10.05 of the mental hygiene law."

tion under SORA. This Court added that, if a juvenile delinquency adjudication was to be considered in assessing points against an offender pursuant to SORA, such consideration must be specifically authorized by the legislature, not by the courts or the Board (98 AD3d at 13).

The People respond that *Campbell* is not controlling, and that youthful offender adjudications may properly be considered for purposes of determining a defendant's risk level. In support of this position, the People emphasize that this Court and the other Appellate Divisions have previously held that the Board and the courts may rely upon a youthful offender adjudication for the assessment of points under SORA. Examples include *People v Frey* (125 AD3d 424 [2015] [court properly assessed 10 points under the risk factor for the defendant's age of 20 or less when he committed his first act of sexual misconduct, notwithstanding that it was based on a youthful offender adjudication]), *People v Williams* (122 AD3d 1378, 1379 [2014] [youthful offender adjudications are to be treated as crimes under risk factor 9 for purposes of assessing the defendant's likelihood of re-offending and danger to public safety]), *People v Torres* (103 AD3d 868 [2013] [court properly assessed 30 points under risk factor 9 based upon prior youthful offender adjudication for a violent felony; although defendant contended that certain provisions of CPL 720.35 conflicted with provisions in the Guidelines permitting consideration of a youthful offender adjudication under risk factor 9, it was unnecessary to decide this issue because he conceded that he would have been assessed 15 points for his other criminal history, and his score still would have been within presumptive risk level two]), *People v Irizarry* (98 AD3d 1193, 1193-1194 [2012] [court properly assessed 30 points based upon youthful offender adjudication]), *People v Vasquez* (89 AD3d 816 [2011] [same]), *People v Stacconi* (81 AD3d 1046, 1046-1047 [2011] [same]), *People v Thomas* (59 AD3d 783, 784 [2009] [same]), *People v Baker* (57 AD3d 1472 [2008] [defendant's contention that he was improperly assessed 30 points under risk factor 9 is unpreserved for appellate review and without merit, as defense counsel stated at the SORA hearing that youthful offender adjudication was based upon conviction of arson in the second degree]), *People v Masters* (19 AD3d 387 [2005] [court properly assessed five points based upon youthful offender adjudication]), and *People v Moore* (1 AD3d 421 [2003] [rejecting defendant's contention that Board's consideration of a youthful

offender adjudication for sexual abuse in the third degree was improper as a matter of law]). Notably, although *Frey, Williams, Torres,* and *Irizarry* were all decided after *Campbell,* they did not refer to that decision, or analyze its potential impact on the consideration of youthful offender adjudications in SORA proceedings.

Turning to the question of whether *Campbell* precluded the Board and the Supreme Court from considering the defendant's youthful offender adjudication in determining his SORA risk level designation, we note that there are important distinctions between juvenile delinquency adjudications and youthful offender adjudications. While juvenile delinquency adjudications and youthful offender adjudications have somewhat analogous purposes, juvenile delinquency adjudications can only be made in Family Court Act article 3 proceedings,[4] and are based on acts committed by individuals who are too young to be held criminally responsible for their conduct. In contrast, youthful offender adjudications can only follow a criminal conviction. Comparing the relevant sealing provisions of the Family Court Act and the Criminal Procedure Law, it is clear that while evidence from juvenile delinquency proceedings is inadmissible in judicial proceedings, with an exception permitted only for sentencing in a criminal action (*see* Family Ct Act § 381.2 [1]), sealed youthful offender adjudications may be made available if there is specific statutory or judicial authorization to do so (*see* CPL 720.35 [2]; *see also Castiglione v James F.Q.,* 115 AD3d 696, 697 [2014]; *Matter of Barnett v David M.W.,* 22 AD3d 575, 576-577 [2005]). Thus, as the People correctly contend, the statutory restrictions on the use of juvenile delinquency records addressed by this Court in *Campbell* are significantly different from the statutory restrictions on the use of youthful offender adjudications. Taking these distinctions in the statutory sealing provisions into account, we conclude that *Campbell* does not preclude the Board or the courts from considering a defendant's youthful offender adjudication in determining his SORA risk level designation.

Our inquiry does not end here, however, as we must now determine whether there is specific statutory or judicial

---

4. *See* Family Court Act § 381.2 (2), which provides that "[n]otwithstanding the provisions of subdivision one, another court, in imposing sentence upon an adult after conviction may receive and consider the records and information on file with the family court, unless such records and information have been sealed pursuant to section 375.1."

authorization for the Board to consider a defendant's youthful offender adjudication (*see* CPL 720.35 [2]). The People do not assert that there was a court order permitting the use of the defendant's youthful offender records in this proceeding. Therefore, the question that this Court must address is whether there was any specific statutory authority for the Board to consider the defendant's youthful offender adjudication.

The People interpret Correction Law § 168-l (5) as explicitly authorizing the Board's consideration of the defendant's youthful offender adjudication. As relevant here, Correction Law § 168-l (5) states that the Board "shall develop guidelines and procedures to assess the risk of a repeat offense by such sex offender and the threat posed to the public safety." We disagree with the People's contention that Correction Law § 168-l (5) provides specific statutory authority, as required by CPL 720.35 (2), for the Board and the Supreme Court to consider an offender's confidential youthful offender adjudication in a SORA proceeding. There is simply nothing in Correction Law § 168-l (5) that addresses youthful offender adjudications. Correction Law § 168-l (5) (a) does envision that the Board will create guidelines relating to a sex offender's "criminal" history. That statute, however, does not specifically authorize the Board or the courts to deem youthful offender adjudications in SORA proceedings as tantamount to a crime, thereby overcoming the confidential nature of such adjudications.

Nevertheless, Correction Law § 168-l provides, among other things, that the five members of the Board, appointed by the governor, are to be selected from "employees of the [D]epartment [of Corrections and Community Supervision]" (hereinafter DOCCS) (Correction Law § 168-l [1]; Correction Law § 2; L 2011, ch 513). As employees of DOCCS, the members of the Board are responsible for, among other things, the confinement and habilitation of inmates[5] and, as members of the Board, they are responsible for assessing the risk of a repeat offense by sex offenders "and the threat posed to the public safety" (Correction Law § 168-l [5]). The various roles served by the members of the Board are significant because CPL 720.35 (2) permits all official records relating to a youthful offender adjudication to be made available to, among others, "the department of corrections and community supervision . . .

---

5. *See* Department of Corrections and Community Supervision, http://www.doccs.ny.gov (accessed Jan. 15, 2016).

that requires such official records and papers for the purpose of carrying out duties specifically authorized by law." One of the Board's most important duties, as mentioned above, is the assessment of a sex offender's risk to the safety of the public. The disclosure of youthful offender records and papers furthers the Board's performance of this core duty because these materials are related to a sex offender's prior conduct, and consideration of these records is consistent with the Board's view that such prior history is relevant in a SORA proceeding. Furthermore, we note that, in making its determination, the SORA court is statutorily required to review, among other things, "any materials submitted by the [B]oard" (Correction Law § 168-n [3]). Consequently, we find that these Correction Law provisions provide the requisite statutory authorization to permit both the Board and courts to consider sealed youthful offender adjudications in conformity with CPL 720.35 (2) (see People v Frey, 125 AD3d at 424 ["CPL 720.35 does not prohibit the use of youthful offender adjudications by courts"]).

As set forth by our dissenting colleague, we are cognizant that there are fundamental differences between the minds of adolescents and the minds of adults. Further, we do not seek to abridge the legislature's youthful offender scheme, which serves to prevent stigmatization of eligible youths with criminal records. Our determination here does not in any way authorize the release of youthful offender information to parties not entitled to see it. Rather, our holding limits the use of such information to those with statutory access, in order to make an appropriate SORA risk level designation. The dissent asserts that there is no indication that the legislature intended to specifically authorize the Board to utilize youthful offender adjudications in determining a sex offender's criminal history when it amended Correction Law § 168-l (1) in 2011 (see L 2011, ch 62). However, as amended in 2011, the statute clearly provides that members of the Board are employees of DOCCS, and that all official records relating to a youthful offender adjudication are to be made available to DOCCS (see CPL 720.35 [2]). Where, as here, the language of a statute is clear and unambiguous, the courts must give effect to its plain meaning (see People v Brown, 25 NY3d 247, 250 [2015]; People v Williams, 19 NY3d 100, 103 [2012]; Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 581 [2006]; Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]; see also Antonin Scalia & Bryan A.

Garner, Reading Law: The Interpretation of Legal Texts 56 [2012] ["The words of a governing text are of paramount concern, and what they convey, in their context is what the text means"]). Therefore, the legislature's intent in amending the CPL provision at issue is not relevant.

Based upon a plain reading of CPL 720.35 (2), we hold that all official court records and papers relating to youthful offender adjudications can be made available to the Board, which comprises DOCCS employees, for the purpose of making a recommendation regarding a sex offender's risk level under SORA.

Accordingly, the Board and the Supreme Court properly relied upon the defendant's youthful offender adjudication in assessing points under risk factors 9 and 10, and the defendant was properly designated a level three sex offender.

HALL, J. (dissenting). I agree with much of the majority's opinion, except for the conclusion that there is specific statutory authority for permitting the Board of Examiners of Sex Offenders (hereinafter the Board) to consider youthful offender adjudications in making a recommendation regarding a sex offender's risk level under the Sex Offender Registration Act (*see* Correction Law art 6-C; hereinafter SORA). Consequently, I respectfully dissent.

" '[Y]outh is more than a chronological fact' " (*Miller v Alabama*, 567 US —, —, 132 S Ct 2455, 2467 [2012], quoting *Eddings v Oklahoma*, 455 US 104, 115 [1982]). It is a time of immaturity, irresponsibility, and recklessness (*see Miller v Alabama*, 567 US at —, 132 S Ct at 2465) and a "condition of life when a person may be most susceptible to influence and to psychological damage" (*Eddings v Oklahoma*, 455 US at 115). Developments in psychological and brain science continue to show fundamental differences between adolescent and adult minds, for instance, in the parts of the brain related to behavior control (*see Graham v Florida*, 560 US 48, 68 [2010]). A growing body of research in developmental psychology and neuroscience makes it increasingly clear that the adolescent brain is not yet fully formed in areas such as impulse control, planning ahead, and risk avoidance (*see Miller v Alabama*, 567 US at — n 5, 132 S Ct at 2464 n 5). In addition, the character of an adolescent is not as well formed as that of an adult; the adolescent's traits are less fixed and, therefore, the adolescent's actions are less likely to be evidence of irretrievable depravity

(*see Miller v Alabama*, 567 US at —, 132 S Ct at 2464; *Roper v Simmons*, 543 US 551, 569 [2005]). "Only a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood" (*Roper v Simmons*, 543 US at 570, citing Laurence Steinberg & Elizabeth S. Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 Am. Psychologist 1009, 1014 [2003]).

Consistent with these realities, "[t]he youthful offender provisions of the Criminal Procedure Law emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" (*People v Drayton*, 39 NY2d 580, 584 [1976]). To this end, courts have the discretion to designate an eligible convicted defendant as a youthful offender if "in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record" (CPL 720.20 [1] [a]).

Moreover, the Criminal Procedure Law specifically provides that "[a] youthful offender adjudication is not a judgment of conviction for a crime or any other offense" (CPL 720.35 [1]). Once a court determines that a person is a youthful offender, the court "must direct that the conviction be deemed vacated and replaced by a youthful offender finding" (CPL 720.20 [3]). As pointed out by the majority, such youthful offender treatment allows an individual to avoid the stigma and practical consequences that accompany a criminal conviction (*see People v Cook*, 37 NY2d 591, 595 [1975]).

With these principles in mind, I conclude that the Board exceeded its authority in adopting guidelines which include youthful offender adjudications in its definition of "crime[s]" for the purpose of determining a sex offender's criminal history (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 6 [2006]). Contrary to the majority's conclusion, I do not find any specific statutory authority permitting the Board or a SORA court to consider youthful offender adjudications in determining a sex offender's risk level designation.

In 2011, the Department of Correctional Services and the Division of Parole merged to form the Department of Corrections and Community Supervision (hereinafter DOCCS) (*see* L

2011, ch 62, § 1, part C, § 1, subpart A). The merger sought to streamline departmental functions, eliminate duplication of effort, achieve better outcomes for more offenders, and enhance public safety, while simultaneously reducing expenditures and saving taxpayer dollars (*see* Department of Corrections and Community Supervision, Merger of Department of Correctional Services and Division of Parole, http://www.doccs.ny.gov/FactSheets/DOCS-Parole-Merger.html [accessed Jan. 15, 2016]).

Consistent with this merger, in March 2011, the legislature amended Correction Law § 168-l (1) so as to provide, inter alia, that all five members of the Board, who are appointed by the governor, shall be employees of DOCCS (*see* Correction Law § 168-l [1]; L 2011, ch 62, § 1, part C, § 1, subpart B, § 19). Contrary to the majority's conclusion, in my view, this provision does not provide specific statutory authorization for the consideration of youthful offender adjudications in SORA proceedings.

There is nothing in the language of Correction Law § 168-l (1) that addresses youthful offender adjudications in the context of a SORA proceeding. While Correction Law § 168-l (1) provides that members of the Board shall comprise employees of DOCCS, and although DOCCS employees have access to records pertaining to youthful offender adjudications (*see* CPL 720.35 [2]), that does not lead me to the conclusion that a youthful offender adjudication can be considered as a crime in determining a sex offender's criminal history.

There is no indication that the legislature intended to specifically authorize the Board to utilize youthful offender adjudications in determining a sex offender's criminal history when it amended Correction Law § 168-l (1) in 2011. Indeed, there is nothing in the language of Correction Law § 168-l (1), or in the legislative history of the 2011 amendments to that statute, which support such a conclusion. The previous version of the statute provided, among other things, that three members of the Board shall be employees of the Division of Parole and the remaining two members shall be from the Department of Correctional Services (*see* L 2011, ch 62, § 1, part C, § 1, subpart B, § 19). Therefore, it can be inferred that, in amending the statute in 2011, the legislature simply intended to effectuate the merger of the Department of Correctional Services and the Division of Parole into DOCCS.

I acknowledge that DOCCS has access to records pertaining to youthful offender adjudications (*see* CPL 720.35 [2]) and, in

creating presentence reports, routinely refers to such adjudications in describing a defendant's criminal history. Sentencing courts, consequently, are made aware of youthful offender adjudications in determining appropriate sentences. Here, however, the defendant has already served his sentence, yet the Board and the SORA court have considered the defendant's youthful offender adjudication to be a "crime" in assessing his risk level pursuant to SORA. In this respect, the defendant has suffered the practical consequences of his 2001 criminal conviction, even though he received youthful offender treatment.

Because the defendant received youthful offender treatment, his 2001 conviction of criminal possession of stolen property in the third degree was vacated (*see* CPL 720.20 [3]). Pursuant to the Criminal Procedure Law, the defendant's youthful offender adjudication does not constitute a judgment of conviction for a crime or any other offense (*see* CPL 720.35 [1]). Nonetheless, the majority's decision has the effect of treating the defendant's youthful offender adjudication as if it were a criminal conviction, contrary to the laudable purpose of the youthful offender statutes.

Since the defendant's youthful offender adjudication does not constitute a conviction of a crime pursuant to CPL 720.35 (1), I conclude that it should not have been considered in determining his risk level pursuant to SORA, in the absence of specific statutory authority to the contrary. Consequently, it is my opinion that the defendant should not have been assessed 15 points under risk factor 9 and 10 points under risk factor 10. This would result in a total risk factor score of 90 points, making the defendant a level two sex offender.

Accordingly, I respectfully dissent, and vote to reverse and designate the defendant a level two sex offender.

CHAMBERS and DUFFY, JJ., concur with LEVANTHAL, J.P.; HALL, J., dissents, and votes to reverse the order appealed from, and designate the defendant a level two sex offender pursuant to Correction Law article 6-C.

Ordered that the order is affirmed, without costs or disbursements.