RIVERA, J.
***739 On this appeal, defendant challenges his designation as a level three sex offender pursuant to New York's Sex Offender Registration Act (SORA), claiming that the *884 State Board of Examiners of Sex Offenders (Board) may not consider his youthful offender (YO) adjudication when assessing his risk to reoffend. Defendant maintains that the Board's interpretation of its authority under SORA conflicts with the Criminal Procedure ***740 Law's youthful offender provisions. We disagree. The statutes do not prohibit the Board's consideration of YO adjudications for the limited public safety purpose of accurately assessing an offender's risk level. Nor does the Board's interpretation undermine the legislative policy of avoiding stigmatizing a young person with a criminal record. As the Board's consideration of a YO adjudication does not conflict with the CPL, its risk level recommendation could be relied upon by the SORA court. We therefore affirm the Appellate Division's order.
I. Relevant Statutory Frameworks
This appeal implicates the question of whether the Board acted ultra vires in issuing guidelines for determining sex offender risk of re-offense that automatically treat a YO adjudication as part of the offender's criminal history factors, notwithstanding that a YO adjudication is not a conviction. "As our well-established rules of statutory construction direct, we begin our analysis with the language of the statute" ( Beck Chevrolet Co. v. Gen. Motors LLC, 27 N.Y.3d 379, 389-390, 33 N.Y.S.3d 829, 53 N.E.3d 706 [2016] ; see also People v. Andujar, 30 N.Y.3d 160, 163, 66 N.Y.S.3d 151, 88 N.E.3d 309 [2017] ; People v. Ocasio, 28 N.Y.3d 178, 181, 43 N.Y.S.3d 228, 65 N.E.3d 1263 [2016] ), because our primary consideration is to ascertain the legislature's intent, of which "the text itself is generally the best evidence" ( People v. Ballman, 15 N.Y.3d 68, 72, 904 N.Y.S.2d 361, 930 N.E.2d 282 [2010] ; see also Desrosiers v. Perry Ellis Menswear, LLC, 30 N.Y.3d 488, 68 N.Y.S.3d 391, 90 N.E.3d 1262 [2017] ).
A. New York's Youthful Offender Statute: Criminal Procedure Law Article 720
The legislature has provided an alternative to adult sentencing for certain young people who commit crimes between the ages of 16 and 19 years old. Pursuant to Criminal Procedure Law (CPL) article 720, when an "eligible youth" is convicted of a crime, the court determines whether the youth should be designated a "youthful offender."[1] Where such designation is not mandated by CPL 720.20 (1) (b), the court may, in its discretion, decide whether "the interest of justice would be served by ***741 relieving the eligible youth from the onus of a criminal record" ( CPL 720.20 [1 ] [a] ). Once a young person is designated a youthful offender, the court "must direct that the conviction be deemed vacated and replaced by a youthful offender finding" and then "sentence the defendant pursuant to section 60.02 of the penal law" ( CPL 720.20 [3 ] ).
As stated in the CPL, a YO adjudication is "not a judgment of conviction for a crime or any other offense" ( CPL 720.35 [1 ] ). The statute thus codifies the "legislative desire not to stigmatize [these]
*885 youths ... with criminal records triggered by hasty or thoughtless acts" ( People v. Drayton, 39 N.Y.2d 580, 584, 385 N.Y.S.2d 1, 350 N.E.2d 377 [1976] ). As we have recognized, a YO adjudication is nothing short of "the opportunity for a fresh start, without a criminal record"; an opportunity that a "judge would conclude ... is likely to turn the young offender into a law-abiding, productive member of society" ( People v. Rudolph, 21 N.Y.3d 497, 501, 974 N.Y.S.2d 885, 997 N.E.2d 457 [2013] ).
To maximize protection against public opprobrium and the stigma of a criminal record, all YO-related "official records and papers ... are confidential and may not be made available to any person or public or private agency" ( CPL 720.35 [2 ] ). However, access is available where "specifically required or permitted by statute or upon specific authorization of the court" ( CPL 720.35 [2 ] ), as well as for those purposes and to those individuals and entities identified in the YO statute.[2] Department of Corrections and Community Supervision (DOCCS)
***742 personnel-of which the Board is composed-are expressly listed as having access to YO records "for the purpose of carrying out duties specifically authorized by law" ( CPL 720.35 [2 ] ).
B. New York's Sex Offender Registration Act (SORA)
Persons who commit certain sex offenses must comply with New York SORA's mandate to register with the State Division of Criminal Justice Services, which maintains the publicly-available Sex Offender Registry (Correction Law art 6- *886 C). As the legislative history establishes, the "primary government interest" underlying SORA is the protection of the public from sex offenders (see L 1995, ch 192, § 1 ["Legislative purpose or findings"]; People v. Mingo, 12 N.Y.3d 563, 883 N.Y.S.2d 154, 910 N.E.2d 983 [2009] ). More specifically, the statutory structure is intended to address "the danger of recidivism posed by sex offenders" and the investigatory and prosecutorial challenges faced by law enforcement agencies (L 1995, ch 192, § 1 ["Legislative purpose or findings"]; Correction Law § 168 et seq. ).[3] To that end, a sex offender's risk of reoffense ***743 is assessed, and that information is provided to law enforcement and the public.
The legislature charged the Board with recommending to the SORA court one of three statutorily-prescribed levels of notification-level one, two, and three in ascending order of risk-based on an offender's calculated risk to reoffend ( Correction Law § 168-l [6 ] ).[4] SORA mandates that the Board, comprised of five DOCCS employees who are "experts in the field of the behavior and treatment of sex offenders" ( id. § 168-l [1 ] ), "shall develop guidelines and procedures to assess [a sex offender's] risk of a repeat offense" ( id. § 168-l [5 ] ).[5] While SORA contemplates the Board would exercise discretion in developing this assessment tool, SORA requires that the Guidelines be based, in part, on a non-exhaustive list of conditions related to the potential risk of reoffense, including "criminal history factors" such as "the number, date and nature of ***744 prior offenses" ( id. § 168-l [1 ]-[5], [5] [b] [iii] ). In 2006, the Board issued the current Sex Offender *887 Registration Act: Risk Assessment Guidelines and Commentary (the Guidelines), which, in tandem with the Board's risk assessment instrument (RAI), reflects the Board's choice "to create an objective assessment instrument that would provide a risk level combining risk of reoffense and danger posed by a sex offender" (Guidelines at 3). The Board adopted a point scale, "assigning numerical values to each risk factor ... [and t]he presumptive risk level is then calculated by adding the points that the offender scores in each category" (id. ). For each person subject to SORA registration, the Board provides the SORA court-which has the ultimate responsibility of designating the offender's risk level-with an RAI and a case summary along with the Board's recommended risk level.
At the SORA hearing to determine the offender's risk level classification, the offender and the People may each present evidence to the SORA court in support of their positions as to the point assessment and risk level determination, and both parties, as well as the Board, may request a departure from the presumptive risk level indicated by the offender's total score (id. § 168-n). The SORA court may consider a broad range of evidence to determine an offender's proper risk level designation. As this Court explained in Mingo, admissible evidence includes case summaries and the Board's RAI, because such documents "certainly meet the 'reliable hearsay' standard for admissibility at SORA proceedings" (12 N.Y.3d at 573, 883 N.Y.S.2d 154, 910 N.E.2d 983 ). The SORA court must apply the Guidelines, and either accepts the Board's recommendation or departs from it and assigns a different risk level classification ( Correction Law § 168-n [2 ]; see also People v. Gillotti, 23 N.Y.3d 841, 861, 994 N.Y.S.2d 1, 18 N.E.3d 701 [2014] ). Thus, "the Board's duty is to 'make a recommendation to the [SORA] court' ... and the court, applying a clear and convincing evidence standard, is to make its determination after considering that recommendation, and any other materials properly before it" ( People v. Johnson, 11 N.Y.3d 416, 421, 872 N.Y.S.2d 379, 900 N.E.2d 930 [2008] ).
II. Factual and Procedural History of Defendant's SORA Risk Designation
Defendant Jude Francis was convicted in 2005 of first-degree rape, which he committed at the age of 19. He thereby became subject to SORA's sex offender registration requirements (see Correction Law § 168-f ). Pursuant to the Guidelines, the ***745 Board's RAI gave defendant a score of 115 points, including 25 points for defendant's "criminal history" factors, based solely on his YO adjudication for third-degree criminal possession of stolen property, committed when he was 17 years old.[6] The Board's case summary stated that defendant's criminal history "commenced in February 2001 when he was adjudicated a [YO] after pleading guilty to Criminal Possession of Stolen Property in the Third Degree." Based on the total risk factor score, the Board assessed defendant "a Level III (High) risk to reoffend" and did not recommend a departure from this risk assessment. Without the additional 25 points derived from his YO adjudication, however, defendant's score would have placed him in the "Level II" category. *888 Defense counsel challenged the 25 points, arguing that because a YO adjudication is not a conviction, it may not be considered as part of defendant's criminal history for the purposes of SORA. The SORA court rejected this objection and designated defendant a Level three sexually violent sex offender.[7] The Appellate Division affirmed the Level three designation, with one Justice dissenting ( People v. Francis, 137 A.D.3d 91, 25 N.Y.S.3d 221 [2d Dept. 2016] ). We granted leave to appeal ( People v. Francis, 27 N.Y.3d 908, 36 N.Y.S.3d 622, 56 N.E.3d 902 [2016] ).
III. Judicial Review of the Defendant's Risk Level Assessment
"Our analysis begins with the language of the statute" ( Andujar, 30 N.Y.3d at 163, 66 N.Y.S.3d 151, 88 N.E.3d 309 ; see also Ocasio, 28 N.Y.3d at 181, 43 N.Y.S.3d 228, 65 N.E.3d 1263 ; Ballman, 15 N.Y.3d at 72, 904 N.Y.S.2d 361, 930 N.E.2d 282 ["the text itself is generally the best evidence of legislative intent"]; McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment ["in the construction of statutes, the intention of the Legislature is first to be sought from a literal reading of the act itself ... and if language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation"] ). The ***746 Board, as amicus, maintains that "[g]iven [its] 'special expertise' in this field and its delegated responsibility to assess a sex offender's risk of recidivism in light of [their] full criminal history, [its] conclusion that youthful offender adjudications are relevant to [SORA] determinations is entitled to deference" (brief for amicus curiae State Board of Examiners of Sex Offenders at 25). Of course, the same cannot be argued with respect to the CPL, a statute with which the Board has no special relationship nor in which it has special expertise. Any questions as to the meaning of the CPL are for the courts to resolve. As for SORA, indeed, "where a statute's interpretation involves special "knowledge and understanding" ( Kurcsics v. Merchants Mut. Ins. Co., 49 N.Y.2d 451, 459, 426 N.Y.S.2d 454, 403 N.E.2d 159 [1980] ), we defer to "[t]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable" ( Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83, 883 N.E.2d 990 [2008] [internal quotation marks and citation omitted] ). Nevertheless, where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent," we need not rely upon "any special competence or expertise of the administrative agency," and, of course, if an agency's interpretation "runs counter to the clear wording of a statutory provision, it should not be accorded any weight" ( Roberts v. Tishman Speyer Properties, L.P., 13 N.Y.3d 270, 285-86, 890 N.Y.S.2d 388, 918 N.E.2d 900 [2009], quoting Kurcsics, 49 N.Y.2d at 459, 426 N.Y.S.2d 454, 403 N.E.2d 159 ).
In fulfilling its mandate to draft Guidelines that take into account a sex offender's criminal history factors when assessing risk level, including "the number, date and nature of prior offenses" (id. § 168-l [5 ] [a]-[i], [b] [iii] ), the Board interpreted SORA as authorizing consideration of a YO adjudication as part of those criminal *889 history factors. Specifically, the Guidelines provide that "[a]lthough an adjudication as a youthful offender is not a conviction," it is a "reliable indicator[ ] of wrongdoing and, therefore, should be considered in assessing an offender's likelihood of reoffense and danger to public safety" (Guidelines at 6-7 and n 6). The Guidelines further state that "the [statutory] term 'crime' ... includes criminal convictions [and] youthful offender adjudications" (Guidelines at 6). YO adjudications are therefore included as part of the "offender's prior crimes" (id. ).
SORA expressly requires that the Board assess an offender's risk of reoffense, which in turn forms the basis for the Board's recommendation to the SORA court of the offender's proper ***747 risk level designation ( Correction Law §§ 168-h, 168-o ). To facilitate the Board's proper assessment, the Board has access to an offender's full criminal background: SORA requires that "[n]otwithstanding any other provision of law to the contrary" state and local entities, including the district attorney and correctional facility, "shall forward relevant information pertaining to a sex offender to be discharged, paroled, released to post-release supervision or released to the board for review.... Information may include, but may not be limited to all or a portion of the arrest file, prosecutor's file,... court file, commitment file ... pertaining to such person" (id. § 168-m). SORA thereby grants the Board access to the documents, which are available under the CPL if "specifically required or permitted by statute" ( CPL 720.35[2] ). Moreover, members of the Board, as DOCCS employees, have access to YO-related records "for the purpose of carrying out duties specifically authorized by law" (see CPL 720.35[2] ). Thus, SORA's directives both provide the statutory "require[ment] or permi [ssion]" to release the YO records under one provision of the YO statute, and describe "the duties specifically authorized by law" to allow for their release under another. In fulfillment of those duties, the Board presents its recommendation to the SORA court, which also has access to the records (see Correction Law § 168-m ["in any subsequent proceedings in which the sex offender who is the subject of the sealed record is a party and which requires the board to provide a recommendation to the court pursuant to this article, such sealed record shall be available to the ... court"] ).
The Board's inclusion of defendant's YO adjudications in assessing the risk of reoffense was based on the Board's expertise and experience, which is entitled to judicial deference. The Board "is charged with producing accurate case summaries as an integral part of its functions and it has expertise culling through records to produce a concise statement of the factual information relevant to [the] defendant's risk of reoffense" ( Mingo, 12 N.Y.3d at 572-573, 883 N.Y.S.2d 154, 910 N.E.2d 983 ). Indeed, "an accurate determination of the risk a sex offender poses to the public is the paramount concern" ( id. at 574, 883 N.Y.S.2d 154, 910 N.E.2d 983 ). The Board has not unreasonably construed SORA as permitting it access to YO records for the limited purpose of assessing an offender's risk of reoffense and recommending a risk level designation to the SORA court; nor has the Board violated the CPL.
Defendant challenges the Board's automatic assessment of points based on his YO adjudication on several grounds. First, ***748 defendant posits that the Board may not count a YO adjudication as part of an offender's criminal history because the CPL decrees that a YO adjudication "is not a judgment of conviction for a crime or *890 any other offense" ( CPL 720.35 [1 ] ). Defendant is correct that the CPL 720.35 [1 ] prohibits treating a YO adjudication as a conviction. Nevertheless, he goes one step further and interprets the statute as saying a youthful offender has not committed an offense. We are unpersuaded by this reading of the statutory language, as defendant fails to account for the fact that a YO adjudication is premised on a youth's commission of a crime. A YO adjudication replaces the conviction, not the offense itself, as is clear from the reference in Penal Law § 60.02 (3) to "offense of conviction for which the youthful offender finding was substituted."
As we have explained, the YO framework "shifts the determination of youthful offender status from the prepleading stage to the postconviction stage" ( Drayton, 39 N.Y.2d at 584, 385 N.Y.S.2d 1, 350 N.E.2d 377 ). In other words, an eligible youth determination follows a conviction, which is replaced with the court's YO finding. This in turn subjects the young person to a unique, legislatively-created status under the Penal Law. A YO adjudication changes the eligible youth's status so that the young person avoids "be[ing] sentenced like any other criminal" ( Rudolph, 21 N.Y.3d at 501, 974 N.Y.S.2d 885, 997 N.E.2d 457 ), and the "practical consequences which accompany a criminal conviction" ( People v. Cook, 37 N.Y.2d 591, 595, 376 N.Y.S.2d 110, 338 N.E.2d 619 [1975] ). This relieves the youthful offender of the stigma of a public criminal record that would otherwise follow the young person into adulthood and limit future opportunities. In the CPL, the legislature provided the opportunity for a fresh start ( Rudolph, 21 N.Y.3d 497, 974 N.Y.S.2d 885, 997 N.E.2d 457 ).
The Board acknowledges that YO adjudications are not criminal convictions, referring to them only as "reliable indicators of wrongdoing" that "should be considered in assessing an offender's likelihood of reoffense and danger to public safety" (Guidelines at 6-7). In providing a non-exhaustive list of factors and conditions-and not solely "offenses"-that shall serve as a basis for the Board's risk level assessment, the legislature demonstrated intent to allow the Board to consider the full spectrum of an offender's prior unlawful conduct (see Theroux v. Reilly, 1 N.Y.3d 232, 240, 771 N.Y.S.2d 43, 803 N.E.2d 364 [2003] [if the legislature had intended to restrict applicability of statute, "it easily could have and surely would have written the statute to say so"; a court "may not create a limitation that the Legislature did not enact"] ).
***749 Defendant also asserts that because the CPL requires YO-related records be treated as confidential, the Board may not rely on the information contained in such records. This argument is undermined by defendant's concession that the Board may consider a YO adjudication as a reliable indicator of a risk of reoffense in some, albeit rare, cases. Defendant takes the position that the CPL prohibits the use of YO adjudications for the automatic assessment of points, but permits their use in individual cases as a basis to recommend an upward departure. There is nothing in the statute, however, that makes this distinction. Either the CPL permits consideration of YO adjudications or prohibits it.
In any event, as we have discussed, CPL 720.35 (2) provides the Board with access to YO-related documents. Defendant's argument that access alone does not authorize use ignores that the CPL does not permit access for its own sake, but in furtherance of a statutory purpose. Here, that purpose is found in SORA, which requires the Board to establish guidelines and make risk level determinations based, *891 in part, on an offender's past actions ( Correction Law § 168-l [5 ] ).
Defendant's other argument, that automatic assessment of points violates the purpose of CPL article 720-to spare youths the lifetime stigma of a criminal conviction-draws heavily from the legislative policy that animates the youthful offender statutory framework. Certainly, "[t]he primary advantage of such treatment is the avoidance of the stigma and practical consequences which accompany a criminal conviction" ( Cook, 37 N.Y.2d at 595, 376 N.Y.S.2d 110, 338 N.E.2d 619 ), and any action by the Board or SORA court constraining this opportunity would run afoul of the legislature's intent. Yet, the legislature intended to prevent those who commit youthful transgressions from carrying the stigma accompanying a conviction, not against the consequences that flow from any subsequent acts committed as adults. Here, defendant's sex crime conviction, rather than the unlawful acts that led to his YO adjudication or the YO status itself, triggered SORA's registration requirements. Moreover, YO records are not made public in the SORA registry. SORA requires that the Board's recommendation to the SORA court remain "confidential and shall not be available for public inspection" ( Correction Law § 168-l [6 ] ), and that, upon application of the sex offender of the district attorney, the SORA court "seal any portion of the [B]oard's file pertaining to the sex offender that contains material that is confidential under any state or federal ***750 law" (id. § 168-m ). Therefore, the Board's consideration of a YO adjudication does not violate the primary intent of article 720: to protect young people from the long-term, societal consequences of their early, misdirected actions.
Defendant also controverts the Board's conclusion that a YO adjudication is a reliable indicator of recidivism. He points to copious scientific data supporting the argument that young people who commit crimes are unlikely to reoffend. His policy arguments are based on sociological research as well as judicial recognition of the psychological difference between children and adults. As the United States Supreme Court has recognized, a young person's " 'lack of maturity' and 'underdeveloped sense of responsibility' lead[s] to recklessness, impulsivity, and heedless risk-taking ... And ...[because] a child's character is not as 'well formed' as an adult's[,] [the child's] traits are 'less fixed' " ( Miller v. Alabama, 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407 [2012], quoting Roper v. Simmons, 543 U.S. 551, 569-570, 125 S.Ct. 1183, 161 L.Ed.2d 1 [2005] ). We too have held that "sociological studies establish that young people often possess " 'an underdeveloped sense of responsibility,' which can 'result in impetuous and ill-considered actions and decisions' ... [This] underscore[s] the need for judicial procedures that are solicitous of the interests of vulnerable youth, especially under New York's current youthful offender process in which guilt is determined in the context of a criminal justice system designed for adults" ( Rudolph, 21 N.Y.3d at 506, 974 N.Y.S.2d 885, 997 N.E.2d 457, quoting Johnson v. Texas, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) ]; see also Middlebrooks, 25 N.Y.3d at 516, 14 N.Y.S.3d 296, 35 N.E.3d 464 ; Alonzo M. v. New York City Dept. of Prob., 72 N.Y.2d 662, 536 N.Y.S.2d 26, 532 N.E.2d 1254 [1988] ; Drayton, 39 N.Y.2d at 580, 385 N.Y.S.2d 1, 350 N.E.2d 377 ] ).
Certainly, the youthful offender statute reflects the Legislature's recognition of the difference between a youth and an adult, and the Legislature clearly made a policy choice to give a class of young people a distinct benefit. Nevertheless, in concluding that an earlier YO adjudication *892 may be used in assessing points against defendant, the Board has not acted in violation of the CPL.[8] For those reasons, defendant's arguments are for the legislature and the Board to consider, and ***751 not within the scope of this Court's authority. "The constitutional principle of separation of powers... requires that the Legislature make the critical policy decisions" ( Bourquin v. Cuomo, 85 N.Y.2d 781, 784, 628 N.Y.S.2d 618, 652 N.E.2d 171 [1995] ). "[F]undamental policy choices ... epitomize 'legislative power,' " as "balancing of differing interests [is] a task the multimember, representative Legislature is entrusted to perform under our constitutional structure" ( Saratoga Cty. Chamber of Commerce, Inc. v. Pataki, 100 N.Y.2d 801, 823, 766 N.Y.S.2d 654, 798 N.E.2d 1047 [2003] ).
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Order affirmed, without costs.
Chief Judge DiFiore and Judges Stein, Fahey, Garcia, Wilson and Feinman concur.

CPL 720.10 (2) provides that youths who have been convicted of a class A-I or A-II felony, have "previously been convicted and sentenced for a felony," or have "previously been adjudicated a youthful offender following conviction of a felony or ... a juvenile delinquent who committed a designated felony act as defined in the family court act" are ineligible for youthful offender treatment (CPL 720.10 [2 ] [a]-[c] ). In addition, youths convicted of an armed felony or an enumerated sex offense are not eligible youths, except if one or more mitigating factors are found, in which case they are eligible and entitled to a youthful offender determination (People v. Middlebrooks, 25 N.Y.3d 516, 526, 14 N.Y.S.3d 296, 35 N.E.3d 464 [2015] ; CPL 720.10 [2 ] [a] [ii], [iii]; CPL 720.10 [30 ] ).

CPL 720.35 (2) provides:
"Except where specifically required or permitted by statute or upon specific authorization of the court, all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency, other than the designated educational official of the public or private elementary or secondary school in which the youth is enrolled as a student provided that such local educational official shall only have made available a notice of such adjudication and shall not have access to any other official records and papers, such youth or such youth's designated agent (but only where the official records and papers sought are on file with a court and request therefor is made to that court or to a clerk thereof), an institution to which such youth has been committed, the department of corrections and community supervision and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law; provided, however, that information regarding an order of protection or temporary order of protection issued pursuant to section 530.12 of this chapter or a warrant issued in connection therewith may be maintained on the statewide automated order of protection and warrant registry established pursuant to section two hundred twenty-one-a of the executive law during the period that such order of protection or temporary order of protection is in full force and effect or during which such warrant may be executed. Such confidential information may be made available pursuant to law only for purposes of adjudicating or enforcing such order of protection or temporary order of protection and, where provided to a designated educational official, as defined in section 380.90 of this chapter, for purposes related to the execution of the student's educational plan, where applicable, successful school adjustment and reentry into the community. Such notification shall be kept separate and apart from such student's school records and shall be accessible only by the designated educational official. Such notification shall not be part of such student's permanent school record and shall not be appended to or included in any documentation regarding such student and shall be destroyed at such time as such student is no longer enrolled in the school district. At no time shall such notification be used for any purpose other than those specified in this subdivision."

The introductory "legislative purpose or findings" of the Act state:
"The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders" (Correction Law § 168 ; L 1995, ch 192, § 1 ["Legislative purpose or findings"] ).

Each risk level imposes registration requirements, increasing in severity and duration. "The duration of registration and verification for a sex offender who ... is designated a sexual predator, or a sexually violent offender, or a predicate sex offender, or who is classified as a level two or level three risk, shall be annually for life" (Correction Law § 168-h [2 ] ), while "any sex offender who is classified as a level two risk, and who has not been designated a sexual predator, or a sexually violent offender, or a predicate sex offender ... who has been registered for a minimum period of thirty years may be relieved of any further duty to register by the sentencing court" (id. § 168-o [1] ). Sex offenders who have been given a level three designation "must personally appear at the law enforcement agency having jurisdiction ... every year ... for the purpose of providing a current photograph" (id. § 168-f [2] [b-2] ), while those with level one or level two designation must do the same every three years (id. § 168-f [2] [b-3] ). "[S]ex offender[s] having been designated a level three risk or a sexual predator shall also personally verify [their] address every ninety calendar days" (id. § 168-h [3 ] ), while offenders designated a level one and two risk need only register changes of address (id. § 168-f [4] ).

In 2011, the Division of Parole, from which three of the Board's members were drawn previously, and the Department of Correctional Services, from which the remaining two Board members were drawn, were merged into a single agency, DOCCS (see Correction Law § 168-l [1 ] [eff. until Mar. 31, 2011], amended by ch 62, pt C, subpt B, § 19, 2011 McKinney's NY Laws 547, 636-637).

The Board assessed 15 points pursuant to Guidelines Risk Factor 9 for the crime underlying the YO adjudication, a nonviolent felony, and 10 points pursuant to Risk Factor 10 because the predicate felony had occurred fewer than three years before the sex offense (see Guidelines at 2).

In these proceedings, defendant challenges only his assignment as a risk Level III, which impacts the nature and burden of his registration requirements. Defendant does not challenge his designation as a sexually violent offender, which subjects him to lifetime SORA registration and forecloses the opportunity those assigned risk Level II otherwise have to petition for relief from registration requirements after thirty years (Correction Law § 168-h [2 ] ).

To the extent defendant argues that the science in fact disproves the Board's conclusion that youthful acts are indicative of a risk to reoffend, and, as a matter of law, the Guidelines violate SORA, he failed to develop a record reviewable by the SORA court with an opportunity for the Board to respond. Thus, the claim is not properly before us.