People v Collier (2026 NY Slip Op 00074)

People v Collier

2026 NY Slip Op 00074

Decided on January 8, 2026

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 8, 2026

No. 118 

[*1]The People & c., Respondent,
vRoderick Collier, Appellant.

Lily Goetz, for appellant.
Larry Glasser, for respondent.

GARCIA, J.

:
Defendant pled guilty to one count of sexual misconduct, a sex offense requiring registration under the Sex Offender Registration Act (SORA). Nevertheless, defendant was not notified of his SORA registration requirements, and approximately six years passed from the time of his plea before this mistake was brought to the attention of the Board of Examiners of Sex Offenders. After a full, albeit delayed, SORA proceeding, defendant was designated a level one sex offender, the least restrictive designation available, with the required twenty-year registration period ordered nunc pro tunc from the date of his release. Defendant claims that the delay between his plea and his SORA hearing violated his substantive due process rights. We disagree and hold that defendant failed to make the required showing that the delay prejudiced his ability to present his case to the SORA court and for that reason, we affirm.
I.
SORA was designed "to protect the public from the danger of sexual recidivism posed by individuals who commit certain sex offenses" (People v Weber, 40 NY3d 206, 209-210 [2023]; see L 1995, ch 192, § 1) by requiring them "to register with law enforcement officials and authoriz[ing] the dissemination of certain information about those individuals to vulnerable populations and the public" (People v Mingo, 12 NY3d 563, 570 [2009]). A defendant's registration and notification obligations correspond to a designated risk level within a three-tiered classification scheme—"levels [*2]one, two, and three in ascending order of risk"—that seeks to capture the offender's risk of reoffending (People v Francis, 30 NY3d 737, 743 [2018]; see Correction Law § 168-l [6]).[FN1]
To determine an offender's risk level, the Board completes a case summary and risk assessment instrument (RAI) that assigns points based on various risk factors, including the offender's criminal history, the age of the victim, and whether the crime involved violence (see Correction Law § 168-l [5] [a]-[i]; SORA: Risk Assessment Guidelines and Commentary at 3 [2006] [Guidelines]; Francis, 30 NY3d at 743-744). The assessment of points under each risk factor results "in an aggregate score that presumptively places an offender in a particular risk level" (Weber, 40 NY3d at 210 [internal citations omitted]). Based on its points assessment, the Board makes a recommendation to the SORA court regarding the offender's risk level, and the court, "which has the ultimate responsibility of designating the offender's risk level[,]" must conduct an independent review of the evidence and may "either accept[] the Board's recommendation or depart[] from it and assign[] a different risk level classification" (Francis, 30 NY3d at 744; Correction Law § 168-n [2]; see People v Gillotti, 23 NY3d 841, 861 [2014]).
The statute mandates that the Board make its recommendation "within sixty calendar days prior to the" sex offender's discharge or release (Correction Law § 168-l [6]). And the SORA court must hold its hearing to determine the sex offender's level of notification no later than "thirty calendar days prior to [the sex offender's] discharge" (Correction Law § 168-n [2]). Additionally, the original sentencing court must "certify that the person is a sex offender," and "advise the sex offender of his or her dut[y]" to register (Correction Law § 168-d [1] [a]). Nevertheless, "[a] failure by . . . the board to act or by a court to render a determination within the time period" (Correction Law § 168-l [8]) or a court's "[f]ailure to include the certification in the order of commitment or the judgment of conviction" (Correction Law § 168-d [1] [a]) "shall not affect the obligation of the sex offender to register" under SORA or "prevent a court from making a determination regarding the sex offender's level of notification" and registration period (Correction Law §§ 168-l [8]; 168-d [1] [a]). Nor does a court's failure to advise a defendant that he or she would be required to register as a sex offender undermine the voluntariness of a guilty plea (see People v Gravino, 14 NY3d 546, 559 [2010]; cf. People v Catu, 4 NY3d 242 [2005] [holding that the failure of a court to advise the defendant that his sentence included a mandatory period of postrelease supervision required vacatur of his plea]). Those convicted of a qualifying sex offense must be registered at one of the three available risk levels; in other words, the minimum available designation is level one and the minimum term for registration is twenty years.
II.
In April 2009, defendant, then 22-years-old, physically assaulted and raped a 16-year-old female acquaintance after she turned down his sexual advances. He was charged with various offenses, including first-degree rape (Penal Law § 130.35 [1]), but eventually pled to one count of sexual misconduct (Penal Law § 130.20 [1]), a misdemeanor offense. At the time of his plea, the court informed defendant that he would be required to pay a $1,000 sex offender fee, but did not [*3]certify defendant as a sex offender or inform him of his obligation to register under SORA (Correction Law §§ 168-d [1] [a]; 168-f). Defendant was given a one-year prison term and was released without supervision in December 2009 after serving approximately eight months of his sentence.
Although defendant's sexual misconduct conviction subjected him to the registration and classification requirements of SORA (see Correction Law § 168-a [2] [a]), the Board did not make a recommendation regarding defendant's risk level prior to his release, and no SORA hearing was held at that time. Accordingly, no judicial determination was made as to defendant's risk level, and defendant remained unregistered for nearly five years. While unregistered, defendant was hired by a social services agency as a "Youth Specialist/Cook" at a non-secure placement program for children between the ages of 12 and 16 who had been remanded there by Family Court. Other than a traffic infraction for unlicensed driving in 2013, defendant had no contact with the criminal justice system.
In November 2014, the New York State Sex Offender Registry brought defendant's conviction to the Board's attention and the Board prepared a case summary and RAI recommending that defendant be classified as a level two (moderate risk) sex offender. The RAI assessed 15 points under factor one for inflicting physical injury upon the victim, 25 points under factor two for having sexual intercourse with the victim, 20 points under factor five due to the victim's age, 5 points under factor nine for defendant's prior criminal history, and 15 points under factor fourteen for being released without supervision, for a total of 80 points. The Board did not recommend a departure from defendant's presumptive level two risk classification.
Defendant moved to dismiss the SORA proceedings, arguing that the delay between his guilty plea and the SORA hearing violated his state and federal due process rights and that, as a result, the court was precluded from assigning him any risk level. Alternatively, defendant asked that he be registered as an "unclassified offender," eliminating "the community notification part" of his sex offender registration. The court rejected these arguments, noting that doing so would "take[] out the underlying rationale of the SORA act itself," and denied the motion to dismiss the proceedings. However, the court granted defendant's request not to assess the fifteen points under risk factor 14 relating to release without supervision, reducing the total to 65 points, which brought defendant's designation down to a level one. The court also agreed to enter the order nunc pro tunc from the date of defendant's release from custody and, as a result, the twenty-year registration period required for a level one offender runs from defendant's December 2009 release date rather than his initial date of registration in March 2015 (Correction Law § 168-h [1]).
The Appellate Division affirmed (223 AD3d 539 [1st Dept 2024]). While noting that the Correction Law is flexible and requires a sex offender to register regardless of any failure by the state to act, the court nevertheless concluded that "an offender's due process rights are violated when a delay is 'so outrageously arbitrary as to constitute gross abuse of governmental authority' " (id. at 540, quoting People v Meyers, 16 Misc 3d 115, 118 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]). To determine whether a delay is outrageously arbitrary, the court adopted a modified version of the speedy trial test laid out in People v Taranovich (37 NY2d 442, 445-447 [1975]), weighing the length of the delay, he reason for the delay, whether the defendant was on notice of the SORA registration requirement, and whether the defendant was prejudiced by the delay (223 AD3d at 540-541). In weighing the factors, the court noted that the "absence of prejudice 'is most critical in view of the facts of this particular case' " (id. at 542, quoting Taranovich, 37 NY2d at 446), and concluded that defendant had in fact "materially benefitted" from the delay because his conduct [*4]during that time led the SORA court to reject the assessment of 15 points thereby reducing his risk level from level two to level one (id.). Therefore, the court held, defendant's due process rights were not violated.
III.
The substantive due process violation claimed here, the delay in commencing SORA proceedings, is an executive act, and we must therefore determine whether such conduct "shocks the conscience" (County of Sacramento v Lewis, 523 US 833, 846 [1998]; Gonzalez-Fuentes v Molina, 607 F3d 864, 880 [1st Cir 2010]; see also People v Lingle, 16 NY3d 621, 632 [2011]). To do so, defendant proposes that this Court adopt, as did the Appellate Division below, an approach based on Taranovich that balances certain factors in determining whether a due process violation occurred but instead strike the balance in his favor. We disagree that such a test is suitable here. Taranovich is grounded in the Sixth Amendment right to a speedy trial, which has "no application beyond the confines of a formal criminal prosecution" (Doggett v United States, 505 US 647, 655 [1992]). As we have reiterated on numerous occasions, "SORA is not a penal statute, and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime" (People v Perez, 35 NY3d 85, 94 [2020] [internal quotation marks and citation omitted]). Because SORA proceedings are civil, not criminal, speedy trial concerns are not implicated (see generally People v Watts, 42 NY3d 60, 66 [2024]). Similarly distinguishable are sentencing delay considerations, where the focus of the court's inquiry is on "the defendant's right to appeal, his eligibility for pardon and commutation of sentence, and, if a retrial becomes necessary, the danger that witnesses may be unavailable" (People v Drake, 61 NY2d 359, 365 [1984]). Given these concerns, we assume that a criminal defendant has been prejudiced by a sentencing delay and "whether dismissal is warranted depends upon the length of the delay and the reasons for it" (id. at 366).
A sex offender's liberty interest, on the other hand, differs from the fundamental rights at issue in the context of criminal prosecution and sentencing:
"SORA risk-level classification implicates a private liberty interest and triggers due process safeguards. Nonetheless, this liberty interest does not rise to the level of a fundamental right or trigger a requirement that the State shield a sex offender from the social stigma flowing from their criminal conviction or an accurate assessment of their risk to the community. For that reason, although the liberty interest at stake here is not to be discounted, it is more limited than the interest threatened by a criminal proceeding, where an innocent person may be inaccurately branded a criminal and subjected not only to unjust stigma but the complete curtailment of liberty through a prison sentence" (Watts, 42 NY3d at 66-67 [internal citations omitted]).
With respect to procedural due process, we have held that while "sex offenders are entitled to certain due process protections at their risk level classification proceedings[,]" those protections " 'are not as extensive as those required in a plenary criminal or civil trial' " (People v Baxin, 26 NY3d 6, 10 [2015], quoting Doe v Pataki, 3 F Supp 2d 456, 470 [SD NY 1998]). Nevertheless, "the [*5]consequences of registration and notification under the Act are sufficiently serious to warrant more than mere summary process" (Baxin, 26 NY3d at 10 [internal quotation marks and citation omitted]) and this State accordingly provides significant protections, including notice that a risk level determination will be made, broad prehearing discovery, an independent review of the evidence by the SORA court, and an opportunity for the defendant at the SORA hearing to present evidence, call witnesses, and challenge the Board's point assessment and risk level determination (see id.; Correction Law § 168-n [2]; Francis, 30 NY3d at 744; see also People v David W., 95 NY2d 130, 137 [2000] [holding that the procedures employed for defendant who was serving a sentence of probation when SORA took effect did not provide adequate notice or opportunity to contest his risk level assignment and were therefore "inadequate to mitigate the risk of an erroneous determination that a sex offender on probation is a sexually violent predator"])[FN2]. Defendant was afforded these procedural safeguards at his SORA hearing.
Applying these general principles to the substantive due process claim here, based on the delay in initiating SORA proceedings, we hold that to establish a violation, a defendant must make a showing that the delay prejudiced his ability to present his or her case to the SORA court. Furthermore, in the context of a delayed SORA proceeding, the remedy for prejudice to that interest must be applied within the SORA framework.
Defendant does not contend that the delay caused any specific risk assessment factor to be scored against him or that he otherwise suffered prejudice at the hearing. Nor could he, considering that, as the Appellate Division correctly noted, he "materially benefitted from the delay" (223 AD3d at 542). The SORA court, taking into account defendant's nearly five years of unsupervised release with only a minor traffic violation, declined to assess 15 points under Factor 14 (release without supervision), reducing his classification from a presumptive level two offender to level one. Instead of a lifetime registration requirement under level two, defendant is required to register for twenty years, and, because of the nunc pro tunc order, his registration period will in effect be fourteen years, with more limited public dissemination of his information. Defendant, in large part as a result of the [*6]delay, is now subject to the least onerous and intrusive conditions a court may
impose on a sex offender required to register under SORA [FN3]. Accordingly, the delay here does not shock the conscience.
Even assuming that defendant's substantive due process claim can somehow be taken as a challenge to a legislative enactment based on the mandatory application of the SORA statute despite the delay (see Correction Law § 168-l [8] [failure by the court to act does not relieve a sex offender of obligation to register]), the claim must be rejected. For that analysis, we must "consider whether the claimed violation was to one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition' " (Hawkins v Freeman, 195 F3d 732, 747 [4th Cir 1999 en banc], quoting Washington v Glucksberg, 521 US 702, 720-721 [1997]). We have "assume[d] that defendants have a constitutionally-protected liberty interest, applicable in a substantive due process context, in not being required to register under an incorrect label" (People v Knox, 12 NY3d 60, 66 [2009] [concluding that "the interest defendants assert () in not having their admittedly serious crimes mischaracterized in a way that is arguably even more stigmatizing, or more frightening to the community, than a correct designation would be" is not "constitutionally insignificant"]). While Knox involved defendants claiming they were mislabeled as sex offenders based on their convictions for crimes that did not "involve[] any sexual act or sexual motive" (id. at 64), similar concerns apply where a SORA proceeding is delayed, and a defendant's ability to present arguments or proof may be affected. The same analysis above concerning prejudice applies to the risk of "mislabeling": defendant must show he was prejudiced by the delay in presenting his case to the SORA court—which he has not done here.
Lastly, we reject the idea that defendant's expectation that he would not be required to register as a sex offender had somehow "crystallized" to the point of becoming a protected liberty interest (see Hawkins, 195 F3d at 747; see also People v Lingle, 16 NY3d 621, 632 [2011]). "[T]he amorphous, heavily subjective nature of such an asserted right based as it is on notions of sufficient temporal duration, sufficiently good behavior and 'crystallized' expectations . . . is not the traditional stuff of substantive due process rights" (Hawkins, 195 F3d at 748). Given the lack of any fundamental right to this "expectation" by a sex offender whose SORA proceeding has been delayed, the test becomes whether the statute is "rationally related to legitimate government interests" (Glucksberg, 521 US at 728). We have no difficulty in concluding that, given the state's public safety interest in ensuring sex offender registration and community notification (see Weber, 40 NY3d at 209-210), the legislation requiring such registration even if delayed passes that test.
There is no occasion here to consider whether any such circumstances might, in an appropriate case, support an application for a downward departure (see People v Gonzalez, 138 AD3d 814, 815 [2d Dept 2016] [in a case involving multi-year delay in holding a SORA hearing, the court held that although "defendant demonstrated, by a preponderance of the evidence, that he [*7]had not been convicted of any sex offenses in the approximately 14 years following his release to probation, which is a mitigating factor not adequately taken into account by (the SORA guidelines)," the SORA court providently exercised its discretion in denying a downward departure given the "grievous nature of the defendant's offense" and "the danger he poses to society should he reoffend"]; People v Welles, 237 AD3d 615 [1st Dept 2025] [finding no due process violation where, despite an 18-year delay between the defendant's sentencing and his SORA hearing, the defendant "was able to establish at the SORA hearing that a downward departure from risk level two to level one was warranted" due to the time the defendant spent on supervised release for a sex offense he was convicted of in another state during the period of delay]). A downward departure analysis in these circumstances fits within the SORA framework, and as with an adjustment of points made to remedy potential prejudice resulting from the delay in the proceedings, provides an avenue for relief while adhering to the public safety goals of SORA.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

WILSON, Chief Judge (concurring):

A cascade of successive failures by government actors resulted in Roderick Collier being released to the community, after fulfilling his prison sentence, without any sex offender designation. After he lived five years without incident, during which time he established a productive life, the government inexplicably realized its mistakes. It then belatedly conducted a Sex Offender Registration Act ("SORA") hearing to provide Roderick Collier with a risk level designation. The majority concludes that due process confers an interest in sex offenders "not being required to register under an incorrect label" (majority op at 11, quoting People v Knox, 12 NY3d 60, 66 [2009]). In addition, though, Mr. Collier has a substantive due process interest in maintaining the law-abiding, post-release life he built during the five years he lived after serving his prison sentence. Although I agree with the majority's conclusion that the delay Mr. Collier experienced, coupled with the SORA court's level one risk determination for him, does not amount to a violation of his due process rights, I write separately to explain why in a different case, a more extended delay or more restrictive SORA designation could result in a due process violation.
I.
At several junctures during a sex offender's criminal case, SORA requires different government actors to provide registrants with notice of their post-release requirements and to move the SORA registration process forward. For instance, upon conviction the trial court "shall certify that the person is a sex offender and shall include the certification in the order of commitment, if any, and the judgment of conviction" and "shall also advise the sex offender of his or her duties under this article" (Correction Law § 168-d [1]). The Board of Examiners of Sex Offenders ("the Board") "shall within sixty days prior to the . . . release of a sex offender make a recommendation . . . to the sentencing court" as to the offender's risk level and any additional designation [FN4] that may be warranted (id. § 168-l [6])[FN5]. After receiving the Board's recommendation, the SORA court shall make a determination with respect to the level of notification [FN6] . . . thirty calendar days prior to discharge, parole or release" (id. § 168-n [2]). Last, any sex offender "released from any state or local correctional facility . . . shall at least fifteen calendar days prior to discharge . . . be informed of his or her duty to register under this article by the facility in which he or she was confined" (id. § 168-e [1]). The statute contains no enforcement mechanism and the government's failure to abide by the statute's prescribed timelines "shall not affect the obligation of the sex offender to register" (id. § 168-l [8]; see id. § 168-d [1]).
Mr. Collier contends, and the People provide no meaningful evidence to dispute, that several government agencies failed to provide him with notice that he owed anything further to the legal system during his plea, at sentencing, during his incarceration, or upon his release. Accordingly, after completing his sentence on December 11, 2009, Mr. Collier worked to rebuild his life under the expectation that he was free from government supervision. To that end, Mr. Collier secured employment as a "Youth Specialist/ Cook" for a non-profit serving at-risk youth in New York City where his supervisor described him as a "model employee"; committed to being an active and supportive father for his sons; enrolled in online education classes; leased an apartment; and built back his credit. As the majority notes, during the time Mr. Collier was unregistered post-release, his only contact with the criminal justice system was a traffic infraction in 2013.
Then, nearly five years after his release in November 2014, the Board initiated proceedings to adjudicate Mr. Collier a level two sex offender. The SORA court, acknowledging that Mr. Collier's post-release conduct illustrated "room for redemption," declined to assess Mr. Collier 15 points for release without supervision (factor 14) and, instead, adjudicated Mr. Collier a level one offender and ordered the registration period to run nunc pro tunc from his release date. Mr. Collier's level one designation requires him to: register on a confidential register for 20 years from the date of his release (Correction Law § 168-h [1]); appear in person to be photographed every three years (id. § 168-b [1] [b]); notify the Division of Criminal Justice Services ("DCJS") of a change of address within ten days (id. § 168-f [6]); and verify registration annually (id. § 168-h [1]-[2]). Although Mr. Collier's information does not appear on a public internet directory, his information is available to members of the public who call a central telephone number (id. § 168-p) and law enforcement can disseminate relevant information to any entity with vulnerable populations (id. § 168-l [6] [a]-[c]). He is also subject to certain statutory and regulatory employment restrictions (see e.g. Correction Law § 168-v [prohibiting anyone subject to SORA from operating an ice cream truck]; NYCRR 413.4 [e] [iii] [determining SORA registrants are ineligible to work at daycares]; NYC Health Code § 48.09 [m] [3]—[4] [determining SORA registrants are ineligible to work at children's day or overnight camps]). The combined effect of the level one designation and the court's nunc pro tunc order means that Mr. Collier will be able to ask the court to terminate his SORA registration in 2029.
Had Mr. Collier been adjudicated a level two or level three offender, he would have been subject to a host of additional requirements including, but not limited to, registration for life (Correction Law § 168-h [2]); his information in a public internet directory (id. § 168-h [2]); and employment reporting requirements (Correction Law § 168-f [1] [b-1]). Level three offenders are also required to provide an updated photo annually (id. § 168-b [1] [b]) and report every 90-days for an in-person registration verification (id. § 168-h [3]). Where a sex offender has been convicted of a crime against a victim who is under the age of 18, or if the offender has been designated level three (regardless of the age of the victim), the offender is also subject to the Sexual Assault Reform Act (SARA) and its residency requirements, which prohibit a designated offender from living within one thousand feet of school grounds (Executive Law § 259-c [14]; Penal Law § 220.00 [14]).
II.
A SORA risk-level classification "implicates a private liberty interest and triggers due process safeguards" (majority op at 8, quoting People v Watts, 42 NY3d 60, 66 [2024]). In addition to its procedural protections, " 'the guarantee of 'due process of law' includes 'a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them' " (People ex rel. Johnson v Superintendent, Adirondack Correctional Facility, 36 NY3d 187, 198 [2020] quoting Zinermon v Burch, 494 US 113, 125 [1990]). To determine whether the government's delay in initiating Mr. Collier's SORA proceedings violated his substantive due process rights, the majority posits that the Mr. Collier "must make a showing that the delay prejudiced his ability to present his case to the SORA court" (majority op at 10). Relying on a Fourth Circuit case, the majority summarily "reject[s] the idea that defendant's expectation that he would not be required to register as a sex offender had somehow 'crystallized' to the point of becoming a protected liberty interest" (majority op at 12, citing Hawkins v Freeman, 195 F3d 732, 747-748 [4th Cir 1999]). Although I agree that, on the facts of this case, Mr. Collier's [*8]due process rights were not violated, the analysis in Hawkins is unconvincing, and in different circumstances a lengthy delay could amount to a violation of substantive due process.
Mr. Collier asserts a constitutional liberty interest in the legitimate expectation in the finality of his obligations stemming from his conviction. In Hawkins, the state mistakenly granted the defendant parole, revoked his parole, and ordered his reincarceration (195 F3d 732, 735 [4th Cir 1999]). At most Hawkins is persuasive authority that the right "of a prisoner to remain free on erroneously granted parole so long as he did not contribute to or know of the error and has for an appreciable time remained on good behavior to the point that his expectations for continued freedom from incarceration have 'crystallized' " is not "fundamental" such that the state action is not subject to strict scrutiny review (Hawkins, 195 F3d at 747-748). But the Hawkins court recognized that the defendant asserted a liberty interest, even if not a fundamental one, requiring rational basis review (id. at 748)[FN7]. We have similarly affirmed the principle that, at a minimum, "[a]ll infringements of liberty by the State must be tested under the due process clause" and "where no fundamental right is infringed legislation is valid if it is rationally related to a legitimate government interest" (People v Knox, 12 NY3d 60, 67 [2009]; Johnson, 36 NY3d 187, 199 [2020]).
Even assuming the interest Mr. Collier asserts is not "fundamental," SORA registration requirements at any risk level "[u]nquestionably . . . impose[] significant burdens" restricting registrants' liberty (People v Gravino, 14 NY3d 546, 556 [2010])[FN8]. At a minimum, before the state can upend an offender's life after a lengthy delay, such state action must be rationally related to a legitimate government interest. Public safety is unquestionably a legitimate state interest. When the government adheres to SORA's prescribed timelines, the rational relationship between governmental interest in public safety and SORA's restrictions on an offender's liberty is clearest. But suppose instead of a five-year delay resulting in a level one designation, Mr. Collier's SORA hearing had been delayed for twenty years and he was designated a level three offender based on his conviction, without consideration of his post-release law-abiding conduct. Suppose further that, as a result of [*9]his delayed designation, he was forced to give up his home and his job, jeopardizing the relationships he worked hard to rehabilitate in the decades since his incarceration. Rather than promote public safety, destabilizing an offender's life to enforce SORA's requirements may directly undermine it by increasing recidivism (see e.g. Ortiz v Breslin, 142 S Ct 914, 916 [2022] [Sotomayor, J., statement regarding denial of certiorari] [collecting scholarship that cautions against residency restriction to reduce recidivism]; Does #1-5 v Snyder, 834 F3d 696. 704-705 [6th Cir 2016], citing J.J. Prescott & Jonah E. Rockoff, Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?, 54 JL & Econ 161 [2011] ["(O)ne statistical analysis in the record concluded that laws such as SORA actually increase the risk of recidivism, probably because they exacerbate risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities."]). Such a consequential delay, in my view, could not withstand rational basis review and is precisely the type of arbitrary governmental action due process protects against.
Accordingly, I concur in result only, with the hope that governmental neglect does not result in such situations in the future.
Order affirmed, without costs. Opinion by Judge Garcia. Judges Rivera, Singas, Cannataro and Troutman concur. Chief Judge Wilson concurs in result in an opinion, in which Judge Halligan concurs.
Decided January 8, 2026

Footnotes

Footnote 1: The duration of registration and the severity of the registration requirements may also depend on whether the sex offender is designated a sexual predator, sexually violent offender, or a predicate sex offender (see Francis, 30 NY3d at 743 n 4; Mingo, 12 NY3d at 570-571; Correction Law § 168-h [1], [2]).

Footnote 2: Certain states do not afford notice and an opportunity to be heard prior to assigning a sex offender a risk level designation (see e.g. In re Meyer, 142 Wash 2d 608, 623 [Wash 2001 en banc] [holding that "no due process rights attach to the classification of the risk such (sex offenders) present on their release from confinement"]; see also Connecticut Dept. of Public Safety v Doe, 538 US 1, 4 [2003] [holding that the Connecticut sex offender registration statute requiring registration based exclusively on "the fact of previous conviction, not the fact of current dangerousness" does not violate due process although registrants are not entitled to a "predeprivation hearing"]; Milks v State, 894 So 2d 924, 926 [Fla 2005] [holding that the Florida Sexual Predators Act, which "does not provide any procedure for determining in individual cases whether or not a person with an Act-qualifying conviction actually presents a danger to the community that would justify the imposition of the Act's . . . registration and public-notification requirements" does not violate procedural due process]; State v Hayden, 96 Ohio St 3d 211, 214 [2002] [holding that due process does not require a hearing prior to the imposition of registration requirements upon a defendant convicted of a sexually oriented offense who is not a sexual predator or habitual sex offender]).

Footnote 3: To the extent it has been suggested that a defendant may be certified as an "unclassified" sex offender without a designated risk level or without corresponding community notification requirements, those cases should not be followed (see e.g. People v Gregory, 71 AD3d 1559 [4th Dept 2010]; Matter of Gregory v People of the State of New York, 36 Misc 3d 544 [Sup Ct, Monroe County 2012]). SORA requires that a risk level be assigned without exception to those convicted of certain sex offenses, and defendant here was given all the relief available.

Footnote 4: In addition to a risk-level classification, certain offenders may be designated as "sexual predator," "sexually violent offender" or "predicate sex offender" as defined by Correction Law § 168-a (7) (a)-(c).

Footnote 5: It is the Board's recommendation to the SORA court that commences SORA risk-level hearing process (Correction Law § 168-n [2]).

Footnote 6: SORA creates a three-tiered risk level classification whereby a "level one" designation indicates "the risk of repeat offense is low"; "level two" indicates the risk is "moderate"; and "level three" indicates "high" risk of repeat offense (Correction Law § 168-l [6] [a]-[c]).

Footnote 7: Although on different constitutional grounds, we have held that "after release from prison, a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence" (People v Williams, 14 NY3d 198, 217 [2010]).

Footnote 8: Although to date we have declined to do so, other state and federal courts across the country have concluded that modern sex offender registration and notification schemes are punitive for purposes of an ex post facto or double jeopardy analysis (see e.g. Doe v Lee, 102 F4th 330, 339 [6th Cir 2024]; Does #1-5 v Snyder, 834 F3d 696. 704-705 [6th Cir 2016]; Doe v State, 167 NH 382, 111 A3d 1077, 1100 [2015]; State v Letalien, 985 A2d 4, 26 [Me 2009]; Starkey v Oklahoma Dep't of Corr., 305 P3d 1004 [Okla 2013]; Commonwealth v Baker, 295 SW3d 437 [Ky 2009]; Doe v State, 189 P3d 999, 1017 [Alaska 2008]). Mr. Collier falls short of supplying a record on which I could conclude that the effect of his belated nunc pro tunc level one registration requirements following a five-year delay is "so punitive . . . as to negate the [the State's] intention to deem it civil" (Smith v Doe, 538 US 84, 92 [2003]). However, a different record may require us to address a situation in which a nominally civil consequence is severe enough to require heightened constitutional protection.